SANFORD S. SMALL *vs.* MINNEAPOLIS ELECTRO-MATRIX COMPANY and others.

January 16, 1891.

**Corporation—Lease to Foreign Corporation—Resolution of Directors.**
A resolution of a board of directors of a domestic corporation construed as contemplating (if ratified at a meeting of stockholders called for that purpose) a transfer of its property and a surrender of the management of its business to a foreign corporation for the period of 25 years, in consideration of a specified percentage of the proceeds to be paid by the latter.

**Same—Injunction at Suit of Shareholder.**—*Held,* that at the suit of a non-assenting stockholder of the domestic corporation, such contemplated acts should be enjoined.

Appeal by defendants from an order of the district court for Hennepin county, *Lochren* and *Smith,* JJ., presiding, refusing to dissolve an injunction.

*Hart & Brewer* and *C. J. Bartleson,* for appellants.

*J. M. Shaw* and *Cross, Carleton & Cross,* for respondent.

DICKINSON, J. The Minneapolis Electro-Matrix Company is a Minnesota corporation, of which the plaintiff, and the several individual defendants who have answered in this action, are the stockholders and directors. The American Electro-Matrix Company is a foreign corporation, organized and existing under the general laws of the state of New Jersey. For the sake of brevity, the former corporation will be hereafter designated as the "Minneapolis Company" and the latter as the "American Company." The case is here on appeal by the Minneapolis Company and the individual defendants above referred to, from an order refusing to dissolve a temporary injunction. Speaking comprehensively, it may be said that the injunction restrained the Minneapolis Company and the individual defendants, its directors and stockholders, from carrying into effect a resolution of the board of directors, which, as set forth in the answers of the appellants, was as follows:

"Resolved, that the directors of the Minneapolis Electro-Matrix Company recommend to the stockholders of the company the adop-

tion of the following proposition from the American Electro-Matrix Company: 'That the Minneapolis Electro-Matrix Company lease for twenty-five years whatever rights and property of every description it has under the laws of Minnesota a right to lease, to the American Electro-Matrix Company, a corporation organized under the laws of the state of New Jersey, upon the following terms, namely: The American Electro-Matrix Company shall assume and pay all indebtedness of this company, and meet all obligations arising under any contracts made by it; shall furnish all capital that may be required for the prompt prosecution of its patent applications, interferences or other suits, for the speedy development of its business in this country, for the negotiation of franchises in foreign countries on the best possible terms, and for the manufacture of machines in the most speedy and perfect manner; shall bring into the direction and practical management men of high reputation and business experience, and shall enlist in the different states the active co-operation of efficient men, through organization of franchise companies or otherwise if more desirable arrangements for the interests of this company can be made; and shall pay to the Minneapolis Electro-Matrix Company one-half of the net receipts from all sources, after deducting all expenditures under the provisions of this lease.'

"Resolved, that T. C. Bates, Erastus Wiman, and C. W. Davison be a committee to prepare, in conference with the American Electro-Matrix Company, and with the advice of Duncan, Curtis & Page, on behalf of this company, a lease in accordance with the above terms, to be executed on behalf of this company by its officers, upon the approval of the stockholders at a meeting hereby called to be held at Minneapolis."

After the adoption of these resolutions, a meeting of the stockholders was called to take action upon this matter. By the injunction, as subsequently modified, the Minneapolis Company and its directors were restrained from executing a lease or transfer of its franchises or property to the American Company, and the stockholders were enjoined from voting to ratify any such lease or transfer; but it was expressly provided that the corporation should not be thereby prohibited from carrying on its ordinary and lawful business through

its board of directors and its officers in its accustomed, usual, and lawful manner, retaining to itself the control and management of its affairs.

The facts bearing upon the propriety of the injunction are disclosed only so far as they are set forth in the pleadings. The precise purposes for which the Minneapolis Company was organized are not stated in the pleadings of either party. The facts are disclosed, however, that the corporation owns valuable patents for a new system of printing, which it purchased by the issue of the entire amount of its authorized capital stock,—$1,000,000; and the answers of the defendants justify the inference that the proper business of the corporation consisted in part, if not principally, in the construction of machines or apparatus for printing, under such patents, and in introducing them into use by others so as to derive a royalty therefrom. But however this may be, and whatever may have been the particular nature and scope of the purposes for which this organization was effected, we are of the opinion that the learned judges of the district court were right in considering the acts to which the injunction was directed as being a violation of the legal rights of the plaintiff as a stockholder of the corporation, in that the carrying into effect of what was contemplated in these resolutions would have been substantially a surrender and transfer of the property and business of the Minneapolis Company to another and foreign corporation, not for the purposes of winding up the affairs of the former, and distributing its property to those who would in that event be entitled to it, but in order that the business which this corporation was organized to prosecute might be for the period named carried on by the foreign corporation, in consideration of a percentage of the proceeds of the business to be paid by it. That such was the purpose contemplated seems very apparent from the terms of the resolution above recited. It is to be assumed from the pleadings and from the resolution itself that this corporation was organized for the purpose of carrying on some business, whatever its precise nature may have been, and the resolution discloses the purpose that for the period of 25 years such business should *not* be conducted by the Minnesota corporation, but that it *should* be taken up and carried on solely by

the American Company. As justifying these conclusions, it is only necessary that attention be directed to the facts that the transfer of rights and property is to be for the period of 25 years; that the American Company is to assume and pay all the debts and perform all the contract obligations of the Minneapolis Company; to furnish the capital for the prosecution of the patent applications of the domestic corporation, for the conduct of its suits, *the speedy development of its business*, for the negotiation of franchises, the manufacture of machines; and to pay to the Minnesota corporation, whose continued existence is plainly contemplated, a specified percentage of the proceeds of the business. Other provisions, recited above, but not here again referred to, go to support the conclusions announced.

We need not inquire how far, or under what circumstances, considerations of public policy and of the general interests of the state may affect the right of a corporation to discontinue the business for which it was created, and to surrender to another corporation its property and the conduct of such business. We do decide that such a surrender of the property, and, so far as possible, of the functions, of a corporation, in order that, while it is to still continue in existence, its business may be carried on by another corporation, to which such transfer is made, would violate the rights of a non-assenting stockholder arising from the contract implied, if not expressed, in the creation of such an organization; and he would be entitled to have such acts restrained by injunction. *Stewart* v. *Erie & Western Trans. Co.*, 17 Minn. 348, (372, 898;) Cook, Stocks, §§ 667, 668; 1 Mor. Priv. Corp. §§ 413, 416; *Black* v. *Delaware, etc., Canal Co.*, 24 N. J. Eq. 455; *Zabriskie* v. *Hackensack & N. Y. R. Co.*, 18 N. J. Eq. 178; *Abbot* v. *Am. Hard Rubber Co.*, 33 Barb. 578; *Middlesex R. Co.* v. *Boston & Chelsea R. Co.*, 115 Mass. 347. In the absence of express provision to the contrary, it is to be considered as the law concerning business corporations that their affairs are to be managed in the interest of their stockholders, and by directors or agents appointed by them. This is to be taken to be implied in the contract, unless in some manner a different intention is expressed. It is not to be inferred from the pleadings in this case, even if such a thing be

possible, that the original purposes of this corporation may have included the project of surrendering its business to some other corporation, to be carried on for a period of years by the latter, under the direction and control of *its* officers and stockholders, the stockholders of the company thus transferring its business having no voice in the selection of such officers nor in the management of the business. If in fact the contract involved in the corporate organization did express any such extraordinary purpose as the committing of the business and interests of this company to the sole management and control of strangers to this corporation and its stockholders, for a period of 25 years, we think that it was incumbent upon the defendants, upon this motion to dissolve the injunction, to show that fact by presenting the articles of incorporation.

Order affirmed.