Mrs. M. G. Starke, Guardian, v. J. M. Guffey Petroleum Company et al.

No. 1384.   Decided April 3, 1905.

1.—Corporation—Lease.

The power conferred on a private corporation by article 651, Revised Statutes, to sell, mortgage or otherwise convey real property includes the power to lease same. (P. 550.)

2.—Same—Abandonment of Corporate Purpose.

A corporation created for the purpose of mining for oil upon certain lands did not, by the execution by its directors of a lease of the right to so mine upon all its said lands for twenty years, so far change its business and abandon its corporate purposes as to render such lease voidable at suit of a stockholder not consenting thereto. (Pp. 551-553.)

Error to the Court of Civil Appeals for the First District, in an appeal from Jefferson County.

Mrs. Starke, as guardian, sued the J. M. Guffey Petroleum Company and others. Judgment was rendered for defendants on demurrer and was affirmed on appeal by plaintiff, who then obtained writ of error.

*Crawford & Crawford* and *A. D. Lipscomb,* for plaintiff in error.— The charter of the Gladys City Company contemplates that its business shall be managed by a board of directors. The power and duty of this board to conduct the affairs of the corporation can not be delegated or surrendered to a stranger. Sayles' Stats., art. 661; Tempel v. Dodge, 89 Texas, 69; Green's Brice's Ultra Vires, 490-492; York & C. Ry. Co. v. Ritchie, 40 Me., 425; Weidenfeld v. Railway Co., 48 Fed. Rep., 615; Tippets v. Walker, 4 Mass., 595; Thompson on Corp., 3944, et seq.

Neither the board of directors nor a majority of the stockholders of a corporation created under the laws of this State have the power, by sale, lease or otherwise, to so dispose of the plant and property of the corporation as will prevent the carrying on by the corporation itself of the business for which it was created and organized. Lyons-Thomas Hardware Co. v. Perry Stove Co., 86 Texas, 143; Sabine Tram Co. v. Bancroft, 16 Texas Civ. App., 174; Thomas v. Railway Co., 101 U. S., 71; Central Transportation Co. v. Pullman Car Co., 139 U. S., 34-40; Small v. Minneapolis Matrix Co., 47 N. W. Rep., 797; Cass v. Manchester Iron and Steel Co., 9 Fed. Rep., 640; McCutcheon v. Merz Capsule Co., 71 Fed. Rep., 787; Black v. Canal Co., 24 N. J. Eq., 455; Abbott v. American Hard Rubber Co., 33 Barb., 578; People v. Ballard, 134 N. Y., 294; Copeland v. Gas Co., 61 Barb., 60.

*Greer, Greer, Nall & Parker, Proctors, Greer & Minor,* and *Crane, Greer & Wharton,* for defendants in error.—The act of the directors in executing this lease contract under the charter of the corporation was not ultra vires in the sense that it was beyond the power of the corporation to make the contract. Batts' Stats., art. 651, 661; Cates v. Sparkman, 73 Texas, 620; Evans v. Brandon, 53 Texas, 60; Fort Worth Pub. Co. v. Hitson & Reed, 80 Texas, 227; Northside Ry. Co. v. Worthington, 88 Texas, 562; Farwell v. Babcock, 65 S. W. Rep., 513; Indianola v. Railway Co., 56 Texas, 600; Texas & St. L. Ry. Co. v. Robards, 60 Texas, 545; 2 Clark on Corp., pp. 1685-1688; Smith v. Berndt, 1st N. Y. Supp., 108; Featherstonhaugh v. Lee Moore Porcelain Co., L. R., 1 Eq., 318; Pittsburg, etc., Ry. Co. v. Columbus Ry. Co., 8 Bissell (U. S. Cir. Ct.), 456; Nye v. Storer, 168 Mass., 53; Ardesco Oil Co. v. North Am., etc., Co., 66 Pa. St., 375; Coal Creek M. & M. Co. v. Coal Co., 62 S. W. Rep., 162; Phillip v. Aurora Lodge, 87 Ind., 504. An injunction will not be granted where company designs leasing only a part of its property: Small v. Minneapolis, etc., Co., 47 N. W. Rep., 797; 1 Clark on Corp., sec. 152; 1 Beach on Corp., sec. 592; Thompson on Corp., secs. 5641, 5642, 5645; 7 Am. and Eng. Enc. of Law, 2 ed., pp. 699-755; Green's Brice's Ultra Vires, pp. 65, 71, 72. 86. Prima facie the contract of a corporation is considered as infra vires, and it must be shown by the party attacking it that the contract is not authorized by the charter. Green's Brice's Ultra Vires, pp. 37, 38; Indianola v. Railway Co., 56 Texas, 600; Texas & St. L. Ry. Co. v. Robards, 60 Texas, 545. If the lease was within the power of the corporation to make, a stockholder can not maintain a suit to set it aside. Town of Middleton v. Railway Co., 53 Conn., 351. If the by-laws or charter so provide, a corporation may sell all of its property against the wishes of a minority. Republican, etc., Mines v. Brown, 58 Fed. Rep., 644; City of St. Louis v. Gas Light Co., 70 Mo., 69; Peabody v. Westerly Water Works, 37 Atl. Rep., 807. An hotel company may sell its hotel and purchase another. Freeman v. Hotel Co., 40 Atl. Rep., 219.

Where a corporation is chartered to conduct a particular kind of business, which, in its character, is not local or confined to one piece of property which it may happen to own, it is not beyond the power of the corporation, or of its directors, to sell or lease that particular piece of property, since they can carry out the charter purposes on other property similarly situated. Featherstonhaugh v. Lee Moor, etc., Co., L. R., 1 Eq., 318; Henney v. Muhlman, 57 N. Y. Supp., 854; Nye v. Storer, 168 Mass., 53; Temple Grove Seminary v. Cramer, 98 N. Y., 121; Ardesco Oil Co. v. North Am., etc., Oil Co., 66 Pa. St., 375; Benton v. City of Elizabeth, 61 N. J. Law, 411; Simpson v. Hotel Co., 8 H. L. cases, 712. A corporation chartered to conduct an hotel may sell its hotel and buy another. Freeman v. Hotel Co., 40 Atl. Rep., 219.

Under the laws of this State, all corporations have the power to lease their property, given by statute. Wherever a corporation is given by law, or its charter, the right to lease its property, a lease executed by it is not ultra vires or beyond the power of the corporation. Batts' Stats, art. 651; Farwell v. Babcock, 65 S. W. Rep., 509; Clark on Corp., secs. 152, 153.

The discretion of the directors in the management of the corporation, honestly exercised, can not be interfered with or controlled by a stockholder. Cates v. Sparkman, 73 Texas, 619; Burden v. Burden, 54 N. E. Rep., 23 (N. Y.); Morawetz on Corp., sec. 243; New Birmingham I. & Land Co. v. Blevins, 12 Texas Civ. App., 422; Farwell v. Babcock, 65 S. W. Rep., 513; Gamble v. Water Co., 123 N. Y., 91; Wheeler v. Steel Co., 143 Ill., 197.

As to whether suits shall be brought for damages or to set aside contracts made by the corporation, in the absence of fraud or oppression, is a matter of discretion with the directors, and no stockholder has the right to have his judgment substituted for that of the board of directors. New Birmingham I. & Land Co. v. Blevins, 12 Texas Civ. App., 422; Farwell v. Babcock, 65 S. W. Rep., 513; Cates v. Sparkman, 73 Texas, 619.

Under the facts and circumstances of this case, the execution of the lease which it is sought to cancel was not ultra vires, as surrendering all the management of the company's business, and delegating to a stranger the conduct of the corporation's affairs.

Under the laws of this State, and under the general law governing corporations, a corporation chartered under the laws of Texas for the purpose of buying and selling land, the erecting of buildings, accumulation and loan of money, and the conducting of a mining and manufacturing business, has the power to lease a tract of land which it owns, to another, for him to conduct a mining operation thereon; and especially is this true where the corporation retains lands on which it could conduct its business of mining.

It appears from plaintiff's petition and exhibits hereto annexed, that Gladys Company is a strictly private corporation, charged with no duty to the public, but chartered by the State for the purpose of the erection

of buildings and the accumulation and loan of funds for the purchase
and sale of real estate in the city of Gladys, and the transaction of a
manufacturing and mining business; and that the president and vice-
president of Gladys Company, in due form of law and under the com-
mon seal of said company, in good faith and with no interest adverse
to said company, executed the lease of September 18, 1900, and said
lease was on December 21, 1900, filed for record and on December 22,
1900, recorded in the land records of Jefferson County, Texas, and that
plaintiff Mrs. Starke had actual notice of said lease as early as January
10, 1901, and that said lease was on May 16, 1901, assigned to Guffey
Company, and the latter company, pursuant to the stipulations of the
lease, in good faith entered upon the leased premises and before No-
vember 29, 1901, the date upon which this suit was filed, had bored
nine oil wells and had five or six other oil wells in process of construc-
tion, and had extracted and marketed 2,000,000 barrels of oil from the
leased premises; and that the board of directors of Gladys Company,
upon full knowledge of the facts, refused to disaffirm said lease, and
refused to declare it forfeited, but ratified the same and refused to
bring suit to avoid the lease, and that with full knowledge of all the
facts all the stockholders except Mrs. Starke refused her request to
join in a demand upon the board of directors to bring suit to avoid the
lease.  It is, therefore, true in law and in fact that the lease of Sep-
tember 18, 1900, is not ultra vires, but was within the lawful powers
of Gladys Company, and' its directors had the power and authority to
make and ratify the same, and did ratify it, and the stockholders who
refused to make demand on the board of directors to bring suit to avoid
the lease thereby ratified it; and Mrs. Starke, by failing to sue within
a reasonable time for the avoidance of the lease, thereby ratified it;
and said lease has not been forfeited by Guffey Company; and Gladys
Company and its directors and all its stockholders are bound by said lease
and are estopped to deny its validity or to assert that it has been for-
feited.  Rev. Stats., art. 651, par. 4; Fort Worth Pub. Co. v. Hitson
& Reed, 80 Texas, 216; Miners' Ditch Co. v. Zellerbach, 37 Cal., 543;
Treadwell v. Salisbury Mfg. Co., 7 Gray (Mass.), 393; Ardesco Oil Co.
v. North American Oil and M. Co., 66 Pa. St. Rep., 375; Bartholomew
v. Derbery Rubber Co., 69 Conn., 521; State v. Western Irrigation
Canal Co., 40 Kan., 96; Sherman Center Town Co. v. Swigart, 43 Kan.,
292; Central Transp. Co. v. Pullman's Car Co., 139 U. S., 50; Stokes
v. Detrick, 75 Md., 256; United States Rolling Stock Co. v. Atlantic
& G. W. Ry. Co., 34 Ohio St., 450; Twin-Lick Oil Co. v. Marbury, 91
U. S., 587.  That disaffirmance must be made within a reasonable time
after notice and before the parties have changed their positions, see:
Twin-Lick Oil Co. v. Marbury, 91 U. S., 592; Badger v. Badger, 2 Wall.,
87; Harwood v. Railway Co., 17 Wall., 78; Marsh v. Whitmore, 21 Wall.,
178; Wentworth v. Lloyd, 32 Beav., 467; Follansbe v. Kilbreth, 17 Ill.,
522; Clegg v. Edmondson, 8 DeG. M. & G., 787; Prendergast v. Turton,

1 You. & Coll., 98; United States Rolling Stock Co. v. Atlanta & G. W. Ry. Co., 34 Ohio St., 450. That the lease of September 18, 1900, being executed by the proper officers of Gladys Company, and under its common seal, was prima facie valid and Guffey Company had a right to rely on it, see: Sherman Center Town Co. v. Swigart, 43 Kan., 292; Miners' Ditch Co. v. Zellerbach, 37 Cal., 543. The rule that a corporation can not sell all of its assets applies only to corporations charged with a duty to the public, and does not apply to strictly private corporations, see: Central Transp. Co. v. Pullman's Car Co., 139 U. S., 50; Gulf C. & S. F. Ry. Co. v. Morris, 67 Texas, 699; Miners' Ditch Co. v. Zellerbach, 99 Am. Dec., 300.

The statute of this State restricting corporations in the employment of their assets is declaratory of the common law merely, and is only intended to restrain corporations in this regard within their common law powers; and, according to the common law, strictly private corporations had full power, through their boards of directors, to dispose of all their property. Bond v. Terrell Mfg. Co., 82 Texas, 313. (Holding that art. 665, Texas Civ. Stats., is declaratory of the common law.) And as to the common law power of a strictly private corporation to dispose of all its property, see: Treadwell v. Salisbury Mfg. Co., 7 Gray, 393.

BROWN, Associate Justice.—The honorable Court of Civil Appeals made the following statement of the contents of the plaintiff's petition, which has not been challenged in this court, and we adopt it:

"On August 24, 1892, G. W. Carroll, G. W. O.'Brien, Emma E. John, J. F. Lanier and Patillo Higgins were the joint owners of 2700 acres of land in the Veatch survey in Jefferson County, Texas. The owners believing it to be rich in oil, gas and other minerals, and that its resources could best be developed by a corporation, secured a charter under the general laws of Texas, under the corporate name of the Gladys City Oil, Gas and Manufacturing Company. (For convenience it will hereinafter be called "The Gladys Company.") Its authorized capital was $200,000, the shares being of the par value of $100 each.

"The original incorporators were the owners of the land above named and the land constituted its entire capital. Each of the incorporators owned an interest in the corporation equal to their interest in the land. Mrs. Emma E. John owning practically a one-eighth interest. The land was conveyed by the owners to the corporation. Some of the stock was retained in the treasury, but none of it was ever sold.

"Mrs. John died on the —— day of ———, 1895, and her children Alfred and Irma John, minors, became the owners of her shares. Mrs. Starke prior to the institution of this suit duly qualified as the guardian of their estate.

"By its charter its corporate purposes were recited to be 'The erection of buildings and the accumulation and loan of funds for the purchase and sale of real property in the city of Gladys and its suburbs and the transaction of a manufacturing and mining business.'

"The Gladys Company never attempted to exercise the power of erecting buildings and the accumulation and loan of funds for the purchase and sale of real estate in Gladys City and its suburbs or elsewhere. No such town or city was in existence, the land was not within two miles of any town or city, and they renounced such power and never undertook to exercise any corporate power but that of mining. This they elected to exercise by a distinct agreement among the incorporators.

"It is averred that the other powers above named were inconsistent and could not have been lawfully conferred.

"The incorporators were named in the charter as directors for the first year. They thereafter organized and began to bore for oil on the land in question, but their efforts were futile.

"Carroll, O'Brien and Patillo Higgins were directors of the corporation continuously until September 11, 1901. Mrs. E. E. John was a director until her death in 1895. Her interest in the corporation descended at her death to her two children before named, and Mrs. Starke upon her appointment as their guardian in 1895 became a director in her stead.

"Then follow allegations of the subsequent appointment of other directors, and it is averred that by-laws were enacted prescribing notice of directors' meetings and the manner of service, the manner of holding called meetings providing among other things that no business shall be transacted at any called meeting of the board except such as is specified in the call, and it is averred that the defendants had notice of these by-laws.

"On October 20, 1892, the board of directors enacted a by-law forever reserving to the Gladys Company all mineral, oil and gas rights in and under the lots belonging to the company, and it is averred that this by-law has never been repealed. It is also alleged that Lucas and his assigns knew the lease was executed under the circumstances alleged and of the existence of the above by-laws. That on the 20th of June, 1899, G. W. Carroll, G. W. O'Brien and C. T. Heisig, three of the directors at that date, acting without a director's meeting and without authority from the board or stockholders, executed in behalf of the Gladys Company to one A. F. Lucas a lease for one year empowering said Lucas to enter upon a part of the land of the company and prospect for oil and other minerals. That the land included in this lease practically covered all the oil and mineral lands on the property of the Gladys Company. That this was well known to Lucas and Patillo Higgins, a director of the Gladys Company at the time, and Higgins was interested in the lease. That of this contract petitioner had no notice. This contract gave Lucas the option within one year to buy the land thus leased for $33,150. That this contract was wholly without consideration. We do not set out more fully the alleged connection of Higgins with this lease, because as will hereinafter appear it becomes immaterial.

"This lease and option is alleged to be void because ultra vires, made

without authority of the directory or stockholders, and because Higgins as one of the directors had a private interest in the lease.

"It is further averred that under this lease Lucas entered upon the leased land (which amounted to about 600 acres), began to sink a well and thereby satisfied himself that it was very rich in petroleum oil. That he then believed the mineral deposits extended under the entire Veatch and Humphrey surveys. That knowing that his lease was void he fraudulently concealed his discoveries and suggested to the directors Carroll and O'Brien that the oil was in small quantities and of inferior quality, and he could not afford to go further without a lease of their entire holdings for a long period of time. That he thereby fraudulently induced Carroll and O'Brien on the 27th of February, 1900, to execute in the name of the Gladys Company a twenty-year lease on the holdings of the company in the Veatch survey, less amounts previously sold, for a royalty of 10 per cent of the product which might accrue in the course of the development.

"This lease is assailed also as not having been made either by authority of the board of directors or of the stockholders and as ultra vires.

"That thereafter on the 18th of September, 1900, Carroll, G. W. O'Brien, and Chenault O'Brien, assuming to act respectively as president, vice-president and secretary of the company, substituted for the lease of February 27, 1900, another twenty-year lease with like stipulations. That this lease was procured by Lucas aided by Carroll because Carroll had obligated himself to make up to Higgins a certain interest which Higgins claimed as against Lucas in the lease of 1899, and Lucas and Carroll acting in furtherance of their private interest to avoid their obligations to Higgins, and to this end all former leases were canceled and abandoned.

"This lease is assailed upon the same grounds as the former lease, and upon the further ground that Carroll was acting in his own interest and not in the interest of the Gladys Company, of which he was a director.

"The lease last mentioned is the last in the series of transactions complained of. By its terms in consideration of a royalty of 10 per cent of the product to be turned over to the Gladys Company, A. F. Lucas and his assigns are to have the right and they obligate themselves to diligently explore and develop the mineral resources of the leased land for a period of twenty years from February 27, 1900. The usual privilege to use the surface for machinery and buildings for the lease purpose is accorded, and the right is further given the lessee to acquire in fee simple a small part of the land for the establishment of a refinery. A preference right of renewal is also given at the expiration of the lease. The surface rights are reserved to the Gladys Company. Lucas assigned this lease to the J. M. Guffey Company, a partnership, which thereafter assigned it to the J. M. Guffey Petroleum Company, a corporation. Under this lease nine wells had been bored at the date of the trial, 2,000,000 barrels of oil had been produced, and other wells were being sunk.

"There is no complaint that the Gladys Company has not received its

full royalty under the terms of the lease and the inference is inevitable that it has.

"Another ground of attack upon this lease is that Carroll and O'Brien who owned a large majority of the stock, transferred shares to Heisig and one to Chenault O'Brien and others without consideration and elected them directors for the purpose of having them vote the will and pleasure of Carroll and O'Brien, and that such persons were but the agents of Carroll and G. W. O'Brien to vote their pleasure on all questions.

"It is also averred that with respect to this lease Lucas and his assignees had full knowledge that it was not made by authority of the stockholders or of the directors in regular meeting assembled nor in any meeting properly called.

"The pleader then avers that the lessees by failing to proceed with diligence and for other reasons have forfeited their rights under the lease. That she has repeatedly applied both to the stockholders and board of directors in meeting assembled, advised them fully of all the facts and sought to induce them to forfeit the lease, but they have persistently refused to take any action in the matter, wherefore she seeks in behalf of her wards as stockholders to cancel the lease for the various reasons assigned, including the last ground set out above.

"Plaintiff has persistently refused to accept any part of the royalty in behalf of her wards and has in no way acquiesced in the acts of the directors complained of. She had no knowledge of the execution of the last lease until January 10, 1901. The Gladys City Company and its directors were made parties defendant, as also Lucas, the J. M. Guffey Company and J. M. Guffey Petroleum Company. A mandatory injunction was asked against the directory to compel them to resume control of the leased lands and to proceed with the corporate business. Damages and an accounting was asked as against the other defendants and a forfeiture of the lease. The grounds upon which a recovery is sought are summarized in paragraph 21 of the petition to the following effect:

"1. The lease if given effect would constitute a radical change in the business and purposes of the Gladys Company, which could be done only by a vote of the stockholders.

"2. Because the lease was not made at an authorized meeting of the directors.

"3. Because the resolution of the board of directors reserving all mineral rights in land sold stood unrepealed at the date of the lease.

"4. The lease was void because of the interest of Patillo Higgins and G. W. Carroll.

"5. Because the land leased was the only land owned by the company on which it could conduct its corporate business of mining and the lease was therefore an abandonment of its corporate purposes."

Defendant filed a general demurrer to plaintiff's petition, which was sustained by the court and affirmed by the Court of Civil Appeals.

The opinion of Judge Gill of the Court of Civil Appeals in this case

discusses, ably and clearly, every question which has been presented to this court and satisfactorily disposes of the case. We do not deem it necessary to discuss any question presented except that embodied in the first and fifth grounds upon which the validity of the lease is attacked, to wit: "First. The lease, if given effect, would constitute a radical change in the business and purposes of the Glady's Company which could be done only by a vote of the stockholders." "Fifth. Because the land leased was the only land owned by the company on which it could conduct its corporate business of mining, and the lease was therefore an abandonment of its corporate purposes." The proposition embraced in the first and fifth grounds is, that the lease of its land by the Gladys Company was a diversion of its funds from the purposes for which it was incorporated and constituted an abandonment of the business of the company without the consent of one of the stockholders.

The Gladys Company was organized under the general laws of the State of Texas, regulating the creation of private corporations, and we accept the proposition that its powers must be found in the law of its creation with the qualification that the common law, being in force in Texas, would, in so far as it is not inconsistent with the statute, apply to such corporation and confer upon it any power which at common law it might have exercised.

To give to the Gladys Company the benefit of the strongest phase of the case which can be derived from its allegations, we will consider the question as if the purposes for which the corporation was formed had been so written in its charter as to state that its operations were to be carried on upon the land then owned and which was then put into the corporation as its capital stock, which constituted the funds of the corporation and was necessary for its purposes.

The powers of a private corporation created under the general laws of this State are prescribed by article 651, as follows: "Every private corporation, as such, has power (4) to hold, purchase, sell, mortgage or otherwise convey such real and personal estates as the purposes of the corporation shall require, and also to take, hold and convey such other property, real, personal or mixed, as shall be requisite for such corporation to acquire in order to obtain or secure the payment of any indebtedness or liability due or belonging to the corporation." The terms, "otherwise convey," as expressed in the statute, embraces the power to lease the land which belonged to the corporation. Article 624, Revised Statutes, prescribes the manner of conveying estates in land in this State and uses this language: "No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing," etc. A lease of lands for more than one year was held by this court to be a conveyance under the terms of this statute. Dority v. Dority, 96 Texas, 215. We think it unnecessary to cite other authority to show that the language, "otherwise convey,"

empowered the corporation to lease the property specified. The clause of the statute which gives to private corporations in this State the power to lease its lands, simply declares the common law as recognized by the weight of authority. Clark on Corp., p. 142; 1 Beach on Private Corp., sec. 363; 7 Thompson on Corp., sec. 8365.

Article 665 is in the following language: "No corporation created under the provisions of this title shall employ its stock, assets or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." This article virtually enacts a limitation upon the power of the corporation, that it shall not divert its funds or change its business from that which is declared in its charter, and we will not further consider that phase of the case, because there is nothing in the allegations of the plaintiff's petition to show that there was any change made in the character of the business. This leaves us the sole question, whether the making of the lease by the Gladys Company amounted to an abandonment of the purposes for which it was organized. It will be observed that the statute does not place upon the power to lease the lands belonging to the corporation any limitation as to a duration of such lease, but we would not undertake to say, that a corporation might not execute such a lease as would in fact amount to an abandonment of the business of the corporation. The lease in question is for twenty years, and, being authorized by the statute, we are to consider it as legal, unless something be shown in connection with it which would invalidate it. That a lease of real estate used by a corporation to carry on its business does not constitute an abandonment of its purposes is sustained by these authorities: Nye v. Storer, 168 Mass., 53; Bartholomew v. Derby Rubber Co., 69 Conn., 521; Ardesco Oil Co. v. N. A. Mining and Oil Co., 66 Pa. St., 375; Featherstonhaugh v. Porcelain Clay Co., L. R. 1 Eq. Cas., 317; Simpson v. Directors W. P. Hotel Co., 8 H. L. Cases, 711.

In the case of Bartholomew v. The Rubber Company, above cited. it was claimed that a similar lease was ultra vires, because it had the effect to terminate the business of the corporation, and for that reason was void. The Supreme Court of Connecticut, in passing upon the question, said: "We are inclined to think the lease was not void. The lessee is to continue the same business which the corporation was organized to carry on. The lease, therefore, is not a change in the business but only a change in the management of the business." In the case of Featherstonaugh v. Porcelain Clay Company, above cited, the same question was presented as to a lease by a corporation of land which was necessary for its business. The chancellor said: "It appears to me they have not abandoned the purposes of the company. They have granted a lease for twenty-one years, and, so far, they have agreed to take a rent for their property instead of working it themselves, and taking the profit. At the end of twenty-one years they are to have the whole of the property back, and, as it appeared to them (that is the true way to

put it, for they are the sole judges on that part of the case), they would have it back in a more profitable condition at the end of the twenty-one years. They have not exceeded their powers, because nobody can contend that parting with their property for a certain time is exceeding their powers, beyond this, that during all of that time they are not carrying on the business." The leasing of its land by the Gladys Company was not an abandonment by it of its purposes, nor a change of its business, but simply a change of method in managing the business. By employing others to do the work the corporation had made an effort to discover oil by boring wells but failed to do so, and, in the judgment of the majority of the directors who owned seven-eighths of the stock, it was to the interest of the corporation to lease the property and take a per cent of the output rather than to let the land lie idle while others were drawing the oil away to adjacent wells. The Gladys Company was still engaged in the business of mining although it was done by a lessee instead of by employes, and it being within the power and discretion of the Gladys Company to make the lease, courts will not undertake to dictate its methods of management. It may have been unwise to commit the work to others, but it was legally done.

There is some conflict of authority upon the power of a private corporation, at common law, to lease for a term of years all of the property used in the transaction of its business. Small v. Minneapolis E. M. Co. (Minn.), 47 N. W., 797; Abbott v. The American Hard Rubber Co., 33 Barbour, 578; Copeland v. The Citizens Gas Light Co., 61 Barbour, 60; Cass v. The Manchester Iron and Steel Co., 9 Fed. Rep., 640. These cases are based upon the broad proposition that the power to lease does not exist in a private corporation, and therefore a lease made by such corporation is void and amounts to an abandonment of the purposes for which it was incorporated. We have not found a case in which the court recognized the power to lease the property, but declared it void on account of the length of the term.

The cases which hold adversely to our conclusion rest upon the proposition that the charter of a corporation is a contract between its stockholders, to the effect that the funds put into the business should not be diverted to any other use or purpose without the consent of all. This is a sound principle and is enacted into the form of a statute in article 665, before quoted, but from that proposition it is argued that the lease is a departure from the purposes for which the corporation was formed, which had in view the management of the business by the directors themselves and is therefore a violation of the terms of the contract between the stockholders. This reasoning can not apply as to corporations in this State, because when the contract was formed, that is, when the charter was filed, the law authorized the corporation to lease its property and each stockholder entered into the contract, that is, into the corporation, with the understanding and knowledge of the fact that in doing so he empowered the directors to lease the property,

The lease was not ultra vires, but was made by virtue of the power expressly given by the statute. It was not a violation or the contract between the stockholders, but was made in pursuance of the terms of the contract—the charter. We conclude that there is no ground for the attack upon this lease as a diversion of the funds to purposes other than those expressed in the charter, nor that thereby the corporation abandoned the business for which it was organized. We find no error in the judgments of the District Court and Court of Civil Appeals, and they are therefore affirmed.

*Affirmed.*