ALBERT F. TYLER AND ANOTHER v. JOHN R. BRUCE AND OTHERS.[1]

July 10, 1925.

No. 24,459.

**Finding sustained as to ownership of periodical.**

1. The evidence sustains the trial court's finding that the Journal of Radiology, published by the plaintiff publishing company for the defendant society, was the property of the defendant society and not of the plaintiff corporation.

**Plaintiff did not possess irrevocable right of publishing proceedings of society.**

2. The plaintiff publishing company by its arrangement with the defendant society did not have the permanent and irrevocable right to publish the official proceedings of the society, or its journal or official organ.

**Plaintiff not entitled to injunction.**

3. The plaintiff corporation was not entitled to an injunction restraining the defendant society from publishing Radiology, the name of the journal published by the society after its relations with the plaintiff corporation ceased, nor compelling it to give to the plaintiff for publication the proceedings of the society.

[1]Reported in 204 N. W. 644.

1. See Injunctions, 32 C. J. p. 351, § 581.
2. See Contracts, 13 C. J. p. 605, § 630.
3. See Injunctions, 32 C. J. pp. 198, § 304, 199, § 307.

Action in the district court for Ramsey county to restrain defendants from publishing a magazine called "Radiology" and for other relief. The case was tried before R. D. O'Brien, J., who ordered judgment in favor of defendants. Plaintiffs appealed. Affirmed.

*Byron G. Burbank* and *Eugene M. O'Neill,* for appellants.

*Morphy, Bradford & Cummins,* for respondents.

DIBELL, J.

This is an action by Albert F. Tyler and the Radiological Publishing Company, Inc. against John R. Bruce, Russell B. Carman and the Radiological Society of North America, Inc. for an injunction restraining the defendants from publishing a journal called "Radiology;" from publishing any journal upon the subject of radiology; from refusing to deliver to the plaintiff company the proceedings of the Radiological Society of North America, Inc.; from asserting or maintaining that the Journal of Radiology is not the authorized journal for the publication of the proceedings of the Radiological Society of North America; and for an accounting. There was judgment for the defendants adjudging that plaintiffs were not entitled to relief. They appeal from the judgment.

1. The plaintiff, Dr. Albert F. Tyler, is the majority stockholder of the plaintiff corporation and a member of the defendant society. The defendant Bruce publishes "Radiology" in St. Paul for the defendant society; and the defendant Dr. Russell D. Carman is its president. There is published in Omaha, under the name of the plaintiff corporation, the "Journal of Radiology."

On October 26, 1917, "The Western Roentgen Society, Inc." was incorporated under the laws of Illinois. Its object, as expressed in its articles, was:

"The object for which it is formed is the study and promotion of the science of Roentgenology."

Afterwards, in December, 1920, the name was changed by amendment, to "Radiological Society of North America, Inc.," and its objects were stated to be:

"Sec. 1. The study and practical application of radiology, radium, electricity and other branches of physics which are associated directly or indirectly with the medical science.

"Sec. 2. To provide meetings for the reading and discussion and dissemination of radiological data.

"Sec. 3. To maintain the Journal of Radiology.

"Sec. 4. To secure and maintain library and museum facilities."

In 1918 and 1919 the society published "The Journal of Roentgenology." In December, 1919, the name was changed to "The Journal of Radiology." Section 3, quoted above, was adopted after the change of name. Later the constitution was so amended as to make it one object of the society "to maintain a journal."

At the meeting of the society at Chicago in December, 1920, when Dr. Tyler was president, the method of continuing the publication of the journal had serious consideration. There were financial difficulties in maintaining it; or at least in getting it established on a self-sustaining basis. The view was expressed that it was necessary to provide a fund for caring for the immediate publication of the journal until it should become self-sustaining. One Plum, who was of experience in publishing, strongly advised the formation of a corporation. It was contemplated that he would be the business manager. Later he and Dr. Tyler did not agree on the terms of employment and his services were not engaged. He expressed the view that, if the journal could be made to pay its own way the first year, "in years to follow it will be a big money maker." Dr. Tyler was active, and favored the organization of the corporation, and it was decided to proceed with the plan advocated by Plum. It was intended that members of the society would subscribe for the stock, and some of them did. The society was not to be a stockholder. If the venture was money-making, the stockholders would have the profit; if a failure, they would lose. In January, 1921, Dr. Tyler

organized, under the laws of Nebraska, with its place of business at Omaha, the plaintiff Radiological Publishing Company. The nature and purpose of the corporation as stated in its articles of incorporation were as follows:

"The general nature and purpose of this corporation shall be to print and publish journals, magazines, articles and papers, and, if thought best, to secure advertising and subscriptions therefor; to do a general job printing business, and all other things incidental to the business above enumerated, including buying and selling notes and mortgages, leasing, letting, subletting, buying, mortgaging, conveying and selling such real and personal estate as shall be necessary to carry on the same, and especially to publish 'The Journal of Radiology' including the solicitation of advertising matter and the obtaining of subscriptions for said Journal."

The method of exercising its powers, as fixed by the articles, was as follows:

"The corporate powers of this corporation shall be vested in a Board of Directors consisting of six members who shall be elected by the stockholders at their annual meeting."

An amendment to the constitution of the defendant society adopted at the December, 1921, meeting, provided:

"Sec. 1. The Society authorized, the formation of a company to be known as The Radiological Publishing Company, incorporated.

"Sec. 2. The company and its stock shall be owned and controlled entirely by members of the Society.

"Sec. 3. The company shall take charge of the proceedings of the society except as hereinafter provided."

The two corporations, the Illinois corporation and the Nebraska corporation, were separate entities, capable of contracting with others and with each other. The former did not create the latter. Their powers and purposes were distinct.

Things did not go well. The members of the society did not subscribe freely, and there was a lack of working capital. The

annual dues of members were $10 each, of which $5 was for a subscription to the journal. They were not enough, with the money coming from the stock sold, to meet the need. Factional differences arose. After 1922 the society did not pay the subscriptions to the publishing company.

In December, 1922, at a directors' meeting of the publishing company at Omaha, a resolution was passed to the effect that the publishing company should no longer publish the journal of the society. The court finds that in passing the resolution the directors acted in good faith after investigation of the financial condition of the company. On the same day the stockholders of the publishing company, at a meeting whether regularly or irregularly called we do not inquire, made Dr. Tyler general manager, and the publication of the Journal of Radiology was continued in the name of the company.

The Radiological Society at its meeting in San Francisco in June, 1923, changed the name of its journal to "Radiology." The defendant Bruce was chosen business manager and the publication of Radiology at St. Paul commenced, and has continued since.

The trial court found:

"That the Journal of Radiology is, and always has been the property of said defendant society and never at any time became the property of the Radiological Publishing Company. That said defendant society never intended to give up, turn over or lose the ownership and control of said journal.

"That said journal has never been in any form or manner, turned over or given to said publishing company, other than for the purpose of publishing said journal for said defendant society."

This finding is sustained. The journal represented the labors of the Radiological Society. The understanding at the 1920 meeting clearly was that it was to be its property; and that the corporation to be organized was to publish it as the official organ of the society. The journal was the journal of the society, its official medium of communication among its members, and an essential instrumentality in the promotion of the objects of its incorporation. The pub-

lishing company was the agency for putting it in form, attending to its business management, and promoting its circulation. It was a business corporation for pecuniary profit. It hoped to gain through the prosperity of the journal; and its articles authorized a number of other money-making activities. The new journal, "Radiology", took the place of the Journal of Radiology as the official organ of the society. The society had the right to have it so. About these matters there is no substantial question.

2. The position of the plaintiffs is that the society at its 1920 meeting gave a permanent and irrevocable right to the corporation thereafter to be organized, and the organization of which it recognized in the amendment to the constitution made at the December, 1921, meeting, to publish its journal, and its official proceedings, and that this right was not revocable. Their position cannot be better stated than it is put in their brief:

"The right given the company to publish the Journal, including therein the proceedings of the Society, was and is permanent and is not revocable on the part of the society.

"Had the society desired to resume the publication of the Journal, or publish an independent journal at some future time, the society should have so provided when it induced its members to form the company, put their money into it and take over the publication of the Journal. It made no such reservation as to time. The society was making a permanent arrangement whereby the company should publish the Journal at no hazard to the society and at the sole cost of the company."

With this view we do not agree. The society contemplated that a corporation would be formed, and article 6 of its constitution adopted by way of amendment in December, 1921, recognized the plaintiff corporation as the one. The case is not at all like Western Union Tel. Co. v. Pennsylvania Co. 129 F. 849, 64 C. C. A. 285, 68 L. R. A. 968, cited by plaintiffs, nor controlled by other similar cases cited. The arrangement was more like a contract for services or employment. See Barron G. Collier, Inc. v. Kindy, 146 Minn.

279, 178 N. W. 584. Necessarily the society, if it fulfilled the objects of its organization, must control the policy of its journal, the character of the material going into it, and this was intended. There was no written contract. No time limit was fixed. The publishing company did not agree to publish during the life of the society nor did the latter agree that it might. The society had the right to revoke at will, or at least within a reasonable time.

3. The view of the plaintiffs as to their remedy is concisely stated in their brief. They say "that the *main* purpose of this action is to enjoin the respondents from publishing 'Radiology,' or any other journal *as its official organ.*"

And again they say:

"It will be borne steadily in mind, that the main relief sought in this action is to enjoin the society from publishing 'Radiology' or any magazine as its official organ; that the further relief sought of requiring the society to deliver to the company its proceedings for publication in the Journal, is not necessarily embraced within the main relief sought by this action. It is, however, proper, material and complete relief in order that the company may publish the official Journal of the Society in the future. The Society should not have it within its power to hinder or embarrass the Company in the publication of the Journal by withholding from the Company its proceedings. This is the right of the Company."

The trial court finds on sufficient evidence that the publishing company in December, 1922, was in financial straits; that its condition was under investigation by the directors; and that as a result the board resolved not to publish the journal longer. It finds that the board of directors in doing this acted in good faith and that there was no fraud on the part of the society influencing such result. In view of this resolution of the board and the finding of the court it is difficult to understand how the plaintiffs can have injunctive relief. The case of Small v. Minneapolis Electro-Matrix Co. 45 Minn. 264, 47 N. W. 797, hardly sustains its view that the act of the board was void. It was not assailed directly by a dis-

senting stockholder; but the majority interest, and Dr. Tyler was in control, assumed to make him general manager, disregarding the provision of the articles vesting control in the board of directors.

But all this aside, the plaintiff should not have injunctive relief, either negative or mandatory in form. The object of restraining the publication of Radiology, or other official organ of the society, is that the society be without an official medium of communication with its members and others, unless it chooses to adopt as such the journal published by the plaintiff; and if it is required by a mandatory injunction to deliver its proceedings to the plaintiff for publication, the plaintiff is as near as it may be without official recognition the organ of the society, and in appearance substantially is such. The society has the right to maintain an official organ responsive to its purposes and subject to its control. The plaintiff does not own the right to publish it, nor can it insist rightfully that the society shall not publish as it chooses. If the society does a legal wrong it is liable. See Alworth v. Seymour, 42 Minn. 526, 44 N. W. 1030.

Putting the claim that the society should furnish its proceedings for publication most favorably to the plaintiffs, the action is one in the nature of specific performance of a personal contract to be enforced by a mandatory injunction. That a court of equity has the power in a proper instance to issue an injunction for such purpose is not denied. One was granted in Bennett v. Fox Film Corporation, 149 Minn. 88, 182 N. W. 905, where the contract was definite as to time, contained a provision against cancelation, and bound the defendant simply to furnish films to the plaintiff, the operator of a motion picture show. But there the court said that an "injunction to restrain a threatened breach of a contract will not be readily resorted to, but it may be resorted to when necessary to prevent irreparable injury. * * * The matter rests in large measure in the discretion of the trial court. * * * When an injunction necessarily requires the doing of affirmative acts in performing the contract, the relief will be sparingly granted, but the court has power to prevent irreparable injury by issuing mandatory injunctions in such cases."

The principle is well enough understood. Only its application involves difficulty. It is not applicable to a case like this. We are not cited a parallel case, but the following cases, whether they hold one way or the other, state the general principle: Iron Age Pub. Co. v. Western U. Tel. Co. 83 Ala. 498, 3 South. 449, 3 Am. St. 758; Roquemore v. Mitchell Bros. 167 Ala. 475, 52 South. 423, 140 Am. St. 52; Newman v. French, 138 Iowa, 482, 116 N. W. 468, 18 L. R. A. (N. S.) 218, 128 Am. St. 212; Fowler Utilities Co. v. Gray, 168 Ind. 1, 79 N. E. 897, 7 L. R. A. (N. S.) 726, 120 Am. St. 344; Western U. Tel. Co. v. Pennsylvania Co. 129 F. 849, 64 C. C. A. 285, 68 L. R. A. 968; Lasky v. Celebrated Players Film Co. (D. C.) 214 F. 861.

Briefs of 300 pages are presented. They have been considered carefully. They discuss thoroughly and well many questions which we do not stop to mention. In our view, for fundamental reasons, the plaintiffs are not entitled to injunctive relief. Failing in that the action should not be retained for an accounting. If the society owes the plaintiffs they may go to a court of law.

Judgment affirmed.