# William T. Huguley et al., Appellants, v. Henry Hamburg et al., Appellees.

## Gen. No. 19,963.

1. CORPORATIONS, § 727*—*when court will take jurisdiction of bill concerning affairs of foreign corporations.* The rule that courts of equity will decline to take jurisdiction of a controversy relating to the affairs of a, foreign corporation, where the wrongs complained of are merely against the sovereignty by which the corporation was created or the laws of its existence, or are such as to require for their redress the exercise of the visitorial powers of the sovereign, or where full jurisdiction of the corporation or of its stockholders is necessary to such redress and is wanting, does not apply when a bill is filed on behalf of a foreign corporation, by minority stockholders, to set aside an alleged fraudulent conveyance made by such corporation's agents to another corporation over which the court has acquired jurisdiction by its voluntary appearance. •

2. CORPORATIONS, § 727*—*when jurisdiction of bill not defeated for want of jurisdiction of parties.* On a bill filed in behalf of a foreign corporation by the minority stockholders to set aside an alleged fraudulent conveyance made by the corporation's agents to another corporation, the fact that one of the agents had not entered a general appearance, or was not served with process, will not defeat the jurisdiction of the court where it does not appear its jurisdiction over the person of such agent is indispensable or even necessary in order to grant the relief.

3. EQUITY, § 211*—*grounds for general demurrer.* The mere fact that a bill prays for more kinds of relief than may be properly granted is no ground for sustaining a general demurrer to the bill and dismissing it for want of equity.

4. EQUITY, § 211*—*when bill not obnoxious on general demurrer.* Where a bill in equity sets out various claims to the interposition of the court and a general demurrer is filed, the demurrer will be overruled if any of the claims afford a proper case for the jurisdiction of the court.

Appeal from the Superior Court of Cook county; the Hon. M. L. MCKINLEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed and remanded. Opinion filed December 31, 1914.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

LEWIS, FOLSOM & STREETER and J. G. GROSSBERG, for appellants.

WINSTON, PAYNE, STRAWN & SHAW, for appellees; WALTER H. JACOBS and CHARLES J. McFADDEN, of counsel.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

To an amended bill of complaint filed by appellants in the Superior Court, the court sustained a general demurrer, and the complainants electing to stand by their bill, as amended, it was dismissed for want of equity. This appeal followed.

The amended bill states that the Princeton Copper Mining and Smelting Company, hereinafter referred to as the Princeton Company, is a corporation organized under the laws of the State of South Dakota, with an authorized capital stock of $2,500,000, represented by 2,500,000 shares of the par value of $1 each, of which about 2,000,000 shares have been actually issued; that the complainants own, in the aggregate, 328,950 shares of such stock, and that the defendants, Henry Hamburg and L. Devere Hamburg, own about 1,200,000 shares; that the Princeton Company was organized for the purpose of engaging in the business of mining and smelting, and prior to the year 1910, had its principal office and place of business in the village of Hamburg, Cochise county, Arizona; that the two Hamburgs reside at that place, and that by reason of their large holdings of stock in the company, they have, for a number of years, completely controlled the affairs thereof; that Henry Hamburg is the president and general manager of the company and L. Devere Hamburg is the secretary and treasurer; that none of the complainants resides in Arizona, and that few, if any, of the stockholders, other than the two Hamburgs, reside in Arizona; that the complainants became stockholders in the year 1905; that ever since that time, the two Ham-

burgs have had charge and possession of all the assets and property of the Princeton Company, and have used and appropriated to their own use "large amounts of money or property, the precise amount of which is unknown to complainants, which, in the aggregate, amounts to many thousands of dollars;" that the property of said company, in addition to land, consists of improvements, machinery, fixtures and personal property, which cost the company over $100,000; that in 1910, said Hamburgs, for the purpose of defrauding the complainants and other stockholders of the company, organized a corporation under the laws of Arizona, called the "Hartford-Arizona Copper Mining & Smelting Company," to which they transferred, without any consideration whatever, and against the protest of the complainants, all the property and assets of the Princeton Company, "the pretended consideration at the time being, as your orators are informed, an exchange of stock of the Princeton Company for the stock in the said Hartford-Arizona Company, and among such stockholders as they, the said Henry Hamburg and L. Devere Hamburg, chose to favor, your orators not being of that number;" that after such transfer, the two Hamburgs caused themselves to be elected to the same official positions, respectively, in the new company, that they had occupied with the Princeton Company, and "continued in substantial exclusive charge and management" of the Hartford-Arizona Company, with offices in the same place as before, and conducted the affairs and business of the Hartford-Arizona Company in the same manner as before, except the change of the corporate name, and except that the complainants, and other stockholders whom said Hamburgs wished to exclude were not on the purported list of stockholders of the new company; that said Hamburgs have failed and refused to account to the Princeton Company for the disposition of its property; that said Hamburgs selected and controlled the board of directors of both companies and both said boards

have neglected and refused to institute any proceedings against said Hamburgs to compel them to account, and that it would be useless to demand of either of said boards that they should institute such proceedings. The bill states that it is filed by the complainants in their own behalf and in behalf of all other stockholders of the Princeton Company who are similarly situated, and prays that an account may be taken under the direction of the court; that the Hartford-Arizona Company "may be decreed to restore and return" to the Princeton Company all the property so transferred and to give an account of the income and profit derived therefrom; that a receiver may be appointed for both companies, and for such other and further relief as equity may require.

The bill as amended also contains other allegations of fraud on the part of said Hamburgs in selling stock of the Hartford-Arizona Company, but, in the view we take of this case, it is unnecessary to consider such allegations in order to determine whether the court erred in sustaining the general demurrer and dismissing the bill for want of equity.

The decision of the chancellor seems to have been based upon the contention of appellees, which is repeated and relied upon in this court, viz., that "courts of equity will decline to take jurisdiction of a controversy relating to the affairs of a foreign corporation where the wrongs complained of are merely against the sovereignty by which the corporation was created or the law of its existence, or are such as to require for their redress the exercise of visitorial powers of the sovereign, or where full jurisdiction of the corporation and of its stockholders is necessary to such redress and is wanting." This contention is a quotation taken almost *verbatim,* from the opinion of the Supreme Court in the case of *Babcock v. Farwell,* 245 Ill. 14. The sentence thus quoted is found on page 34 of the volume in which the opinion is published, but it

is by no means the whole of the court's opinion in that case, nor does it, when removed from its context, and standing alone, fairly express the substance of the rule laid down in that case. Further on in the same opinion the court states the remainder of the rule, and this remainder is more in point in this case than the sentence relied on by appellants. On page 36, it was said: "Where, however, the relief sought is within the general jurisdiction of a court of chancery, where all the parties necessary to the full and proper adjustment of the rights involved are before the court and where the relief sought does not require the exercise of the visitorial power of the government, we think the court should exercise the power of determining controversies brought before it instead of remitting suitors to a foreign jurisdiction. * * * In many cases, under various circumstances, the courts have entertained jurisdiction of a suit brought against a foreign corporation and its directors or agents to compel the restoration of property misappropriated by such officers. In such case, though the act complained of is, in part, that of the corporation itself, and though the complainant is affected only in his capacity as a stockholder, the suit is, in effect, for the benefit of the corporation itself. The corporation, under such circumstances, may maintain a suit against its defaulting directors wherever they may be found, and there is no good reason why a stockholder who seeks to enforce precisely the same rights in favor of the corporation may not maintain a similar suit. * * * Where minority stockholders seek to have restored to the corporation property fraudulently appropriated to their own use by directors who, together with the corporation itself, are personally subject to the jurisdiction of the court, we think it is the better doctrine that the court should exercise its jurisdiction for the determination of the controversy." The doctrine thus declared was applied in two later cases reported in the same

volume, viz.: *Edwards v. Schillinger*, 245 Ill. 231, and *Voorhees v. Mason*, 245 Ill. 256.

We think these cases are decisive of the questions involved in this case. Here a part, at least, of the relief sought, viz., the restoration to the Princeton Company of property alleged to have been misappropriated by its officers and agents, as well as the accounting prayed for, is clearly within the general jurisdiction of a court of chancery. Such relief does not require the exercise of the visitorial power of the government, but merely the exercise of the corrective powers of a court of equity. Henry Hamburg, the president and general manager of the Princeton Company, the Princeton Company itself and the Hartford-Arizona Company, all entered their general appearance in this case and the demurrer was filed by them jointly and severally. These defendants thereby became personally subject to the jurisdiction of the Superior Court in this case. The appearance of the other Hamburg does not seem to have been entered, nor was there any service of process upon him. But it does not appear from any allegation in the bill of complaint that jurisdiction over the person of L. Devere Hamburg is indispensable, or even necessary, in order to compel the Hartford-Arizona Company and Henry Hamburg to "restore and return," or to account for, the property alleged to have been fraudulently appropriated by them and now alleged to be in their possession and control. While the bill contains unnecessary allegations and prays for more kinds of relief than it might be feasible or proper to grant, yet, in its essential features, it is a bill brought on behalf of the Princeton Company, by minority stockholders, to set aside an alleged fraudulent conveyance made by that company's agents to another corporation over which the court has acquired jurisdiction by its voluntary appearance. This relief, at least, is clearly within the jurisdiction of the Superior Court. The mere fact

that other relief is also prayed for is no ground for sustaining a general demurrer to the bill, and dismissing the bill for want of equity. The rule in that respect is that where a bill in equity sets out various claims to the interposition of the court and a general demurrer is filed, the demurrer will be overruled if any of the claims affords a proper case for the jurisdiction of the court. *Snow v. Counselman*, 136 Ill. 191; *Gooch v. Green*, 102 Ill. 507.

For the reasons stated, the decree of the Superior Court will be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*