[Civ. No. 3821. Third Appellate District.—October 3, 1929.]

C. H. CASTLE, Jr., et al., Respondents, v. ACME ICE CREAM COMPANY (a Corporation), Appellant.

Joseph C. Meyerstein and H. K. Landram for Appellant.

Edward Bickmore for Respondents.

THOMPSON (R. L.), J.—This is a rehearing of an appeal from a judgment in an action for damages for the breach of a contract and for partial failure of the consideration therefor.

The plaintiffs were the owners of an ice-cream business in Merced, called the Castle Ice Cream Company, valued at $45,000, which was sold and delivered to the defendant corporation subject to an indebtedness of $26,679.65, which

obligation was assumed by the purchaser. The sale was consummated pursuant to the terms of a written contract which was executed by the respective parties August 22, 1922. The title to the ice-cream plant passed to the purchasers. In addition to assuming the indebtedness above mentioned, the balance of the purchase price agreed upon was the sum of $1,000 in cash, which was paid and the transfer of "common stock of the Acme Ice Cream Company in the amount of $9,000 par value," which was issued by the corporation and delivered to the plaintiff. In the contract for the purchase of the Castle Ice Cream Company it was agreed that plaintiffs might exchange one-half of the common stock which was transferred to them for preferred stock of the corporation of a similar value. C. O. Swanberg, the president of the corporation, was the owner and holder of 4,500 shares of common stock which had been duly issued to him in payment of a debt due to him from the corporation. In fulfillment of the contract which is involved in this action Swanberg transferred to the corporation his stock. His certificate for 4,500 shares was indorsed and canceled and the corporation, on August 25, 1922, issued to the plaintiffs two certificates of common stock of forty-five shares each of the total par value of $9,000. This stock was issued and transferred to the plaintiffs without the authorization of the corporation commissioner of California. In a contract executed by the respective parties four days subsequent to the original purchase, it was agreed that within two years therefrom the plaintiffs might exchange one-half of their common stock for preferred stock of the same value. On May 25, 1924, pursuant to the last-mentioned agreement, plaintiffs tendered to the defendant forty-five shares of common stock and demanded preferred stock in exchange therefor. The defendant failed and refused to consummate this exchange. Thereafter, for the first time the plaintiffs discovered that the defendant corporation had never procured from the California corporation commissioner an authorization to sell or transfer this common stock, and that the stock transaction was, therefore, void. The plaintiffs then tendered to the defendant corporation the entire $9,000 issue of common stock on the ground that the issue of stock was void, and demanded in lieu thereof the sum of $9,000 in cash, which was refused. This action for damages was then

commenced. Judgment for $9,000 was rendered in favor of the plaintiffs. The court found that all of the allegations of the complaint were true and upon the contrary that all of the allegations of the answer in conflict therewith were untrue, but did not specifically find the market value of the stock.

The appellant contends that the plaintiffs' sole remedy consists of an action of rescission which must fail for the reason that there was no offer to restore the entire consideration; that a suit for damages will not lie in an action which is based on a contract, the consideration for which is wholly or partially illegal; that the judgment is not supported by the evidence for the reason that there is a total lack of proof of the value of the stock in question, and that the action is barred by the provisions of the statute of limitations.

It is conceded this is not an action for rescission. A return of the entire consideration was not tendered. Rescission is a proper remedy for cancellation of an unlawful contract when the invalidity does not appear on the face of the instrument. (Sec. 3406, Civ. Code.) It is, however, not the only remedy for loss sustained under facts similar to those which exist in the present case. ██ Clearly, the stock transaction was illegal and void for two reasons: First, because the defendant corporation sold and transferred the stock without authority of · the corporation commissioner, and second, assuming that the corporation possessed an authorization to sell the stock in question, there was a failure to comply with the specific requirement of the authorization to the effect that a true copy of the permit was required to be exhibited and delivered to each prospective purchaser of securities before the subscription therefor was accepted.

The California Corporate Securities Act (Stats. 1917, p. 673; Act 3814, Deering's Gen. Laws 1923, sec. 3) provides in part: "No company shall sell . . . or offer for sale, negotiate for the sale of, or take subscriptions for any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it so to do." And section 4 of said act further provides in part: "The commissioner may impose such conditions as he may deem necessary to the issue of such securities. . . . " Sec-

tion 12 of the act renders void any securities issued in violation of the provisions of this statute.

█ When a part of the consideration for the purchase of property is illegal the entire contract is ordinarily void (sec. 1608, Civ. Code; *Tatterson* v. *Kehrlein,* 88 Cal. App. 34 [263 Pac. 285, 291]; 13 C. J. 513, sec. 471), for the reason that it is impossible to determine which part of the consideration was the controlling factor which induced the agreement to purchase the stock. There is, however, an equitable exception to this rule. The rule does not apply to an innocent party to the contract. █ The seller of securities who is guilty of failure to procure the necessary statutory permit to sell and transfer the stock is estopped from setting up this defense to an action for rescission or for damages. In the Tatterson case, *supra,* it is said: ''The penalties prescribed by the Corporate Securities Act being all laid on the seller and none on the buyer, and the statute being for the benefit and protection of buyers, the parties are not *in pari delicto,* and the buyer may have judgment for the money paid out by him under the illegal contract.'' In the present case it was alleged and found by the court to be true that the plaintiffs were ignorant of the fact that the defendant corporation had failed to procure a permit to sell or transfer the stock in question, and that they did not learn of this fact until April, 1926, which was but a few months prior to the instituting of this action. █ It was further alleged and found to be true that the defendant corporation, through its president Swanberg, falsely represented to the plaintiffs that it had a legal right to sell and issue the stock in question as treasury stock. This action was therefore not barred by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure. (*Lightner Min. Co.* v. *Lane,* 161 Cal. 689, 698 [Ann. Cas. 1913C, 1093, 120 Pac. 771]; *McWilliams* v. *Excelsior Coal Co.,* 298 Fed. 889.)

█ It is argued that since the ninety shares of common stock of the defendant corporation of the par value of $9,000 were owned individually by Swanberg, the president of the company, and that the sale and transfer of his private stock required no authorization from the corporation commissioner, this transfer of stock was not in violation of statute or void. The contract, however, was with the corporation for ninety shares of its common stock and not with its presi-

dent as an individual. The record shows: "There was issued to C. O. Swanberg a certificate for 4,500 shares of common stock in accordance with the terms of the permit of the commissioner of corporations then in force; that certificate was duly endorsed by C. O. Swanberg, turned in, canceled, and out of it in addition to other stock, there was issued on the 25th day of August, 1922, to C. H. Castle, Jr., and Mabel Pearl Castle, certificate C–15 for 45 shares and certificate C–16 for 45 shares." This may have been a circuitous way of avoiding the statute. In any event, it was not a transfer of stock from Swanberg to the plaintiffs. His stock was indorsed, transferred to the company and canceled. Other stock was issued directly from the corporation to the plaintiffs without authority from the corporation commissioner. ■ Furthermore, the original agreement to purchase the Castle Ice Cream business specifically provided that the corporation would exchange and transfer to plaintiffs preferred stock of the corporation for one-half of the value of ninety shares of the common stock held by plaintiffs. This part of the contract was also void for lack of authority to make such exchange and transfer of stock.

The only authorization which was obtained from the corporation commissioner prior to the sale and transfer to plaintiffs of the stock in question was dated June 14, 1922, and permitted the sale only of 2,000 shares of *preferred stock*. The sale of no common stock was authorized. Moreover, this authorization provided: "That a true copy of this permit be exhibited and delivered to each prospective subscriber for or purchaser of said securities before his subscription shall be taken therefor or any sale made thereof to him." Respecting this provision the plaintiff C. H. Castle, Jr., testified: "Q. . . . Did anyone ever exhibit any copy or any permit of the Acme Ice Cream Company to sell stock? A. No, sir." The failure on the part of the defendant corporation to comply with this condition of the authorization to sell stock also rendered the sale void. (*Otten* v. *Riesener Chocolate Co.*, 82 Cal. App. 83 [254 Pac. 942].)

■ The sale of plaintiffs' ice-cream business having been consummated without fraud or concealment on their part, and the transfer of defendant's stock as part consideration therefor being illegal and void for lack of statu-

tory authorization, the plaintiffs are entitled to maintain this action to recover the value of the stock, which was duly tendered to the defendant corporation. (*Tatterson* v. *Kehrlein, supra.*)

The appellant, however, contends that neither the pleadings nor the proof will support a finding of damages for the reason that the plaintiffs failed to allege or prove the actual market value of the stock. ▮ It is true that the amount which is recoverable for failure to deliver corporation stock is measured by the market value which must be alleged and proved. (*Peek* v. *Steinberg,* 163 Cal. 127, 134 [124 Pac. 834] ; 4 Thompson on Corporations, 2d ed., 699, sec. 4172.) ▮ There is no presumption that the face value of stock is its real value. (14 C. J. 718, sec. 1099.) ▮ We are of the opinion that the allegations of the complaint sufficiently assert the value of the stock since the question was not raised by a special demurrer. Likewise we are of the opinion that the evidence constitutes a sufficient *prima facie* showing of the actual value of the stock in the absence of testimony to the contrary. The complaint alleged with respect to the value of the forty-five shares of stock in question that "there has been a failure of consideration for plaintiffs entering into said agreement [by virtue of the invalidity of the transfer of stock] in the sum of $4500.00, . . . and by reason of said failure of consideration therein, plaintiffs have been damaged in the sum of $4500.00." It was further alleged that Swanberg, the president of the defendant corporation represented to plaintiffs that the proceeds from the sale of the ninety shares of stock which were to be transferred to plaintiffs would be placed to the credit of the corporation in its treasury and that this was not done and therefore "none of said consideration of $9,000 actually accrued to the benefit of the corporation. . . . " It was further alleged that: "Said shares of the common stock of said corporation of the par value of $9,000 have depreciated in value, and became and now are worthless, to the damage of plaintiffs in the sum of $9,000." These allegations, in the absence of a special demurrer, are sufficient to infer that plaintiffs claimed the ninety shares of stock were actually worth $9,000 at the time of the execution of the contract.

In proof of the actual value of the stock in question our attention is called to the record which does show that the statement was made and filed with the corporation commissioner by the defendant corporation in its application to transfer to Swanberg, the president thereof, 4,500 shares of its common stock, that the value of this stock was $100 per share, for it was transferred to him in payment of an indebtedness of $450,000. This statement was in the nature of an admission on the part of the corporation that the stock was actually worth $100 per share. This authorization also recites that the corporation "proposes to sell and issue 2000 shares of its preferred stock *at par* for cash." The defendant Mabel Castle testified: "I talked with Mr. Swanberg and Mr. Ayers . . . and neither of these gentlemen . . . told me that the 90 shares of stock, *to the extent of $9,000 in value,* was to be transferred to Mr. Castle and myself from the private stock of Swanberg. . . . And *this stock was given as the equivalent of $9,000 in cash."* The sales of stock and the statement of the assets of the corporation indicate that the stock was actually worth $100 per share. There is no evidence in the record to the contrary. This is a sufficient *prima facie* showing of the actual value of the stock to sustain the findings of the court.

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 2, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 2, 1929.

All the Justices concurred.