[Civ. No. 1169.   Fourth Appellate District.—July 30, 1935.]

HELEN SETCHELL, Respondent, v. ANNA PROCHASKA et al., Appellants.

W. S. Staley for Appellants.

Wright, Monroe, Thomas & Glenn for Respondent.

BARNARD, P. J.—This is an action to foreclose a mortgage for $5,000 held by the plaintiff and originally executed and delivered to her and her husband by the California Land Buyers Syndicate, a corporation. The real property covered by the mortgage was conveyed by the defendants to this corporation by deed dated July 23, 1929. It was stipulated that the only consideration given by the corporation in exchange for the real property was 380 units of the investment certificates of said syndicate and that, at the time of the transaction, the permit issued by the commissioner of corporations to said corporation allowed it to issue said units for cash only and prohibited the issuance thereof in exchange for real property. The deed referred to was placed in escrow with a title company, the corporation placed in escrow the investment certificates and the plaintiff and her husband placed in escrow the amount of the loan represented by the mortgage. The escrow was closed and the respective papers delivered. Some months later, on January 8, 1930, the corporation conveyed the property by deed to the defendants, the deed reciting that the conveyance was made "subject to the mortgage indebtedness in the sum of $5000".

In their answer, the defendants alleged that the deed of January 8, 1930, to the defendants was made by the corporation by way of admitting its fault and as a partial restitution for its act in the matter of securing the deed from these defendants on or about July 23, 1929. In a cross-complaint they alleged that on July 19, 1929, they were approached by agents and employees of the corporation named and urged to exchange the real property for the investment shares; that they relied upon certain representations made by the agents and employees of the corporation and agreed to transfer the property to the corporation in exchange for the investment shares; that they did not then know that it was unlawful for the corporation to dispose of its capital stock other than by actual sale for cash; that they did not know this when the reconveyance of January 8, 1930, was delivered to them; that they learned that the transaction was illegal shortly

before this suit was filed; that the purported consideration received in exchange for the real property has utterly failed; that the transaction was void from the beginning on account of its illegality; and that the misrepresentations made by the agents of the corporation were false, were known by them to be false, were made with the intent to deceive the defendants, and were believed and relied upon by them.

While the court found that the only consideration received by the defendants for said property was 380 units of the investment shares of this syndicate, and that its permit allowed said corporation to issue said units for cash only and prohibited the issuance thereof in exchange for real estate, it also found that the plaintiff was not a party to and had no knowledge or notice, either actual or constructive, of the transaction between the defendants and the corporation; that the plaintiff had had no dealings or conversations with the defendants and had made no representations to them; that the exchange of the property and the making of the loan and taking of the mortgage were not a single transaction; that the person who procured the loan from the plaintiff was not her agent; that the plaintiff is an innocent holder for value and had no notice or knowledge of the breach of the permit referred to; and that the note and mortgage were not invalid in their inception but were and are a valid obligation and encumbrance. A judgment was entered in favor of the plaintiff and against the cross-complainants, and this appeal followed.

The appellants contend that the exchange of this property for the investment certificates and the making of the loan was a single transaction taking the form of a "three-cornered" deal, that the issuance of the certificates being illegal the entire transaction was void from the beginning, that title to the property never passed to the corporation, and that the mortgage is, therefore, necessarily void. The trial court has found against these contentions and the evidence amply sustains these findings. It fully appears that the respondent was asked to make the loan by an agent of the corporation who was paid for his services by the corporation, that she looked at the property and agreed to make the loan, that she gave the money to this agent who placed it in escrow, that she knew nothing of the other transaction or as to how the corporation had acquired title to the property, and that

the amount·of the loan was placed in escrow to be delivered in exchange for a first mortgage upon the property. It also appears that the appellants paid the interest on the mortgage from the time the property was reconveyed to them on January 8, 1930, until some time in 1933 and that the respondent never saw the appellants and had no knowledge that anything was wrong with the transaction until shortly before the suit was filed.

It is appellants' contention that this case comes within the rule laid down in such cases as *Trout* v. *Taylor*, 220 Cal. 652 [32 Pac. (2d) 968], where it has been held that an instrument wholly void, such as an undelivered deed, a forged instrument or a deed in blank, cannot be made the foundation of a good title even under the equitable doctrine of *bona fide* purchaser.

We think these cases have no application here. The original agreement to exchange this land for investment certificates was not, in itself, void. The corporation could have complied with the agreement by delivering certificates which had been already sold for cash in accordance with the terms of the permit. When certificates were issued contrary to the terms of the permit the exchange agreement became voidable and while the appellants would undoubtedly have had the right to have the deed set aside for a failure of consideration, the deed itself was valid until this was done. The appellants recognize the situation by alleging false representations in their cross-complaint and that a reconveyance of the property was made by the corporation by way of a partial restitution for its acts. In *Fish* v. *Benson*, 71 Cal. 428 [12 Pac. 454], the rule is quoted from Pomeroy's Equity Jurisprudence as follows:

" 'Where a conveyance has been obtained by the grantee's fraud, so that it would be set aside at the suit of the defrauded grantor, but the fraudulent grantee has in turn conveyed to a *bona fide* purchaser for value, and without notice, the latter will take and hold the property free from all these equities, protected against the equitable remedies of the original defrauded owner.' "

The property in question was conveyed to the corporation by a deed which was not void but voidable, and while it was still in force the loan was made. The deed enabled the corporation to borrow the money from the respondent, who was

an innocent party with no knowledge of the manner in which the deed had been acquired. Under these circumstances, it would be highly inequitable to hold that the deed was invalid from the beginning when this could not be done without injury to a third party whose rights had intervened and whose making of the loan had been made possible by the delivery of the deed. (*Mitchell* v. *Grass Valley Gold Mines Co.*, 206 Cal. 609 [275 Pac. 418]; *Kehrlein* v. *Builders Mortgage Co.*, 131 Cal. App. 714 [22 Pac. (2d) 242].)

While the precise point here raised seems not to have been decided in California, the Supreme Court of Kansas has twice held that the rights of an innocent third party should be protected under circumstances which are quite similar. (*Moos* v. *Land Owners Oil Assn.*, 136 Kan. 424 [15 Pac. (2d) 1073]; *Beltz* v. *Griggs*, 137 Kan. 429 [20 Pac. (2d) 510].)

We therefore hold that while there was a failure of consideration for the deed to the corporation that deed was not such a nullity that it could not be made the foundation of a good title, in so far as a *bona fide* mortgagee is concerned.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 26, 1935.