## ANN ZOCHRISON AND OTHERS v. REDEMPTION GOLD CORPORATION AND OTHERS.[1]

July 2, 1937.

No. 31,121.

[1]Reported in 274 N. W. 536.

384

*Guesmer, Carson & MacGregor* and *Donald F. Pratt,* for appellant.

*Brill & Maslon,* for respondents.

JULIUS J. OLSON, JUSTICE.

Redemption Gold Corporation appeals from an order denying its motion to set aside service of summons as to it on the ground that service thereof upon the chairman of the securities commission did not give the court jurisdiction of defendant *in personam.* We shall refer to appellant hereafter as the defendant unless otherwise specially designated.

The facts may be summarized thus: Defendant is a corporation, created and existing under and by virtue of the laws of Colorado. Its general business is that of mining, milling, reduction, and development of ores; to acquire by purchase, lease, etc., title to mines

and mining lands, and to develop the same. All of its operations have been carried on and conducted in Colorado, and there all of its directors and officers reside. It has never done any business in this state, and it does not now have nor has it ever had any property here, nor has it subjected itself to our jurisdiction in any manner except that in 1933, pursuant to its application for registration and the right to sell its stock here, our securities commission granted the required authority so to do, all in accordance with the requirements of our blue sky law. 1 Mason Minn. St. 1927, § 3996-1, *et seq.* Between April 12, 1933, and August 13, 1934, "some" of the plaintiffs, "although not necessarily all of them," became the owners of a minority interest of its stock by virtue of sales made here pursuant to authority so granted. That authority was temporarily revoked August 13, 1934, and on September 11 the revocation was made permanent.

Plaintiffs' cause is based upon certain alleged fraudulent acts and practices on the part of the individual defendants and one D. A. Odell, now deceased. It is claimed that when defendant made application to register its stock for sale in Minnesota it failed to disclose certain labor liens against its properties; that these liens were later reduced to judgment and the corporate properties sold at sheriff's sale. Odell in May, 1934, acquired the certificate of sale which six months later ripened into a fee title.

It is averred that the individual defendants in November, 1933, conspired together to defraud defendant of all of its property. The Cliffords are said to have entered into an agreement with Odell for the purpose of organizing a syndicate to acquire and operate mining property. By the terms of this arrangement Odell became the representative of the syndicate and of the Cliffords. On November 13, 1933, defendant entered into a lease with Odell by the terms of which he was to take over and operate all of its property for a period of five years. Prior to the execution of the lease the Cliffords had acquired control of defendant by acquisition of a majority of its stock. The property of defendant originally had been procured from one Leach and his associates. They had obligated themselves to sell the property to defendant free of encumbrance. By reason

of the outstanding labor claims, Leach and his associates deposited 75,000 shares with defendant as security against loss therefrom. Defendant foreclosed this collateral, and at the sale Odell purchased the entire block for $100. To make effective the fraudulent scheme, so it is alleged, defendants formed the other corporate defendant, Minnesota Mines, Inc., also a Colorado corporation. This enterprise is said to be wholly under the control of the individual defendants. As a consequence, all property of the Redemption company has been lost to it and is now being wrongfully held by Minnesota Mines, Inc. The properties thus wrongfully converted are alleged to be very valuable and "have produced approximately $250,000 worth of gold above operating expenses during the past year, all of which has been converted by" the defendants, *i. e.*, the Cliffords and Minnesota Mines, Inc.

This suit is one brought by plaintiffs as minority stockholders in the Redemption corporation. They demand judgment as follows:

"1. That the individual defendants and said Minnesota Mines, Inc., be required to account fully for their acts and doings in said premises, including an accounting by the individual defendants for all of the property of the Redemption Gold Corporation used, acquired or converted by them, including all of the gold mined from said properties and the proceeds of the sale thereof, and that the said Minnesota Mines, Inc. be required to account for all of the property of Redemption Gold Corporation held by it or in its name for its own use or for the use and benefit of any individuals.

"2. That the said individual defendants and said Minnesota Mines, Inc. be adjudged and decreed to hold such property as they took from the said Redemption Gold Corporation as trustees for the said Redemption Gold Corporation, and be required to reconvey and transfer the same to the said Redemption Gold Corporation, if they are in a position so to do, or otherwise to account for the proceeds thereof, or be required to respond in damages for any damage done the Redemption Gold Corporation for which they cannot make amends by the return of specific property.

"3. That the lease hereinbefore referred to be declared void and of no effect.

"4. For such other and further relief as may be just and equitable."

■ The only basis upon which jurisdiction rests is by virtue of 1 Mason Minn. St. 1927, § 3996-11, and the power of attorney executed and filed in conformity therewith. That section as far as here material reads:

"Every non-resident person shall, before having any securities registered * * * appoint the chairman of the commission, * * * his attorney, upon whom process may be served in any action or proceeding against such person or in which such person may be a party, *in relation to or involving any transaction covered by this act,* which appointment shall be irrevocable. Service upon such attorney shall be as valid and binding as if due and personal service had been made upon such person." (Italics supplied.)

At the outset it is well to bear in mind the universal concept of what is considered necessary to give a court jurisdiction. In Erickson v. Macy, 231 N. Y. 86, 90-91, 131 N. E. 744, 745, 16 A. L. R. 1322, 1324, 1325, the court states the rule:

"Whenever it is necessary to determine whether jurisdiction has been obtained over a defendant in an action by service of the summons in some way other than by personal service thereof, it must be remembered that the general rule in regard to the service of process established by centuries of precedent, is that process must be served personally within the jurisdiction of the court upon the person to be affected thereby. Substituted service when provided by statute is in derogation of such general rule, and, consequently, the directions thereof must be strictly construed and fully carried out to confer any jurisdiction upon the court."

That is also the rule here. Gilmore v. Lampman, 86 Minn. 493, 90 N. W. 1113, 91 A. S. R. 376. Of course the purpose and intent of the cited statute is to give the court jurisdiction of the person where service is made upon an attorney duly appointed, and to make such service as "binding as if due and personal service had been made upon" the person executing the power. This then leaves for

consideration here the one and only question: Is this suit one "in relation to or involving any transaction covered by" the act? If this be answered in the affirmative, then clearly the court was right in denying defendant's motion.

In determining that question it is necessary that careful consideration be given to the facts pleaded in the complaint. The *transactions* to which plaintiffs point as justification for the jurisdiction asserted are:

(1) Failure in the application to include the labor claims. These amounted to less than $1,300. The listed assets as therein shown amounted to more than $750,000, so that less than two-tenths of one per centum of the assets were represented thereby.

(2) The five-year lease concerning which much is said was an instrument executed in Colorado between parties there domiciled and there to be performed in its entirety. This was and is clearly a Colorado contract.

(3) The 75,000 shares pledged was obviously also a Colorado transaction. Nowhere is there any suggestion that these shares had any other situs than that of the domicile of the corporate enterprise. It was a Colorado pledge, nothing else, and was there enforced.

(4) The purchase by Odell of the sheriff's certificate is also clearly a Colorado transaction. The labor claims upon which the certificate rested were claims arising within that state, reduced to judgment there, and the corporate property sold pursuant to execution was also there.

But, even so, plaintiffs say:

"The misrepresentation to the Securities Commission contained in the original application, upon the basis of which the corporation was ultimately denuded of its assets, was filed in Minnesota as a condition precedent to obtaining permission to sell the securities in Minnesota to these plaintiffs. The sales of the securities here involved were made in Minnesota by the appellant."

Plaintiffs' complaint bristles with charges of fraud and deceit. They place their right of recovery upon fraudulent and deceitful

practices and a conspiracy to "denude" defendant of its assets. Yet they do not desire to rescind their purchase of stock in defendant company, nor is this an action to recover damages. The relief wanted has been stated. In accomplishing their expressed purpose they occupy no other or different position than would any other group of minority stockholders in any corporation who seek relief against official misconduct by the majority group of stockholders or other corporate mismanagement. If the present cause were one to recover money misappropriated by the corporate officers where the majority stockholders were opposed or perhaps were parties to the wrong, the original purchase of the stock would not be of any importance nor even material to the issues to be tried. Supposing this were a suit for disbursement of a cash or stock dividend because of large surpluses available thereto, would not their position be exactly the same, no matter in what manner or by what means their stock was acquired? Their rights and the remedies sought to enforce the same are exactly the same as if there were no fraud connected with the sale of the stock acquired by them.

 It is elementary that fraud may be waived, confirmed, or ratified. 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 3833b, and cases cited under notes. The "defrauded party may either rescind the contract, or he may affirm it and recover the damages sustained." 12 R. C. L. p. 413, § 158. And it is his duty "on discovering the fraud to elect whether he will perform or rescind. If he elects to perform, he thereby, in effect, makes a new contract, and to permit him under those circumstances to recover for a fraud would be to do violence to every rule upon which compensatory damages are allowed. The rule is not changed by the fact that the person guilty of the fraud insists on performance, and that the defrauded party intends to perform and then sue to recover the loss growing out of performance." 12 R. C. L. pp. 413-414, § 159. Clearly, then, upon this record, plaintiffs have confirmed and ratified the sale of the stock now held by them. Their present suit negates any other result.

From what has been said the conclusion necessarily follows that fraud as a basis for jurisdiction under our blue sky law has dis-

appeared. The purpose of the statute, as clearly defined in its title, "is to prevent fraud in the sale and disposition of \* \* \* securities sold or offered for sale *within* the state \* \* \*. We find nothing in the language of the statute which clearly evinces a legislative intention to give the courts of this state jurisdiction in such a case as this." Dragon Motor Car Co. Ltd. v. Storrow, 165 Minn. 95, 96-97, 205 N. W. 694; Ward v. Harris, 273 Mich. 576, 263 N. W. 744. We do not think Anderson v. Chase Securities Corp. 193 Minn. 443, 258 N. W. 743; Kaiser v. Butchart, 197 Minn. 28, 265 N. W. 826; or Streissguth v. Chase Securities Corp. 198 Minn. 17, 268 N. W. 638, hold contrary to the conclusion here reached. The cases are clearly distinguishable, as a reading thereof will abundantly prove.

■ There are practical reasons, too, why we should not by a forced construction of our blue sky law seek to stretch our jurisdiction so as to cover cases such as the one presented. To obtain complete adjudication of all rights of the parties it seems clear that the courts of defendant's domicile can more adequately than ours provide needed remedies. Title to both real and personal property is involved, all within and subject to foreign jurisdiction. It may well be that receivership is essential to bring about finality. There are many other circumstances and ramifications involved as to which the courts there can and undoubtedly will give due and adequate consideration and grant full and complete relief when and as recourse to these tribunals is made. The construction of a statute must be reasonable and practical. "Broad and practical considerations should control." 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8939, and cases cited under notes.

■ When defendant filed its application to register its stock this court had definitely determined that the act was not all-embracing but was of limited scope. Dragon Motor Car Co. Ltd. v. Storrow, 165 Minn. 95, 205 N. W. 694. The statute as there interpreted became a part of the law as fully as if therein written. 6 Dunnell, Minn. Dig. (2 ed.) § 8936b. The interpretation sought by plaintiffs might well lead to grave constitutional questions involving due process. Old Wayne Mut. L. Assn. v. McDonough, 204 U. S. 8, 27

S. Ct. 236, 51 L. ed. 345; Hunter v. Mutual Reserve L. Ins. Co. 218 U. S. 573, 31 S. Ct. 127, 54 L. ed. 1155, 30 L.R.A.(N.S.) 686; Simon v. Southern Ry. Co. 236 U. S. 115, 35 S. Ct. 255, 59 L. ed. 492.

The issues presented are simple and limited. Plaintiffs, whether considered individually or as a minority stockholders group, are not suing for rescission of their purchases nor for damages suffered by reason thereof. What they are seeking, all that is wanted, has been adequately stated heretofore. Obviously such relief has no connection with the means or the manner of their stock purchases. In this situation, our blue sky law necessarily disappears from the picture as a basis for jurisdiction.

Order reversed.

Peterson, Justice (dissenting).

For purposes of this motion, it must be assumed that the facts alleged in the complaint are true. A conspiracy is alleged in the complaint charging that defendants have conspired to register the securities of the Redemption corporation in the state of Minnesota, in violation of our blue sky law, in order to enable defendants to dispose of stock of the corporation to plaintiffs, and that by various acts of fraudulent concealment, all in violation of the blue sky law, defendants have denuded the corporation of its assets and have thereby defrauded plaintiffs of the amounts which they paid for the stock sold to them. Prima facie, plaintiffs are entitled to the prayed for relief against all defendants.

■ It is admitted that plaintiffs have secured jurisdiction over all the defendants except the Redemption Gold Corporation. Plaintiffs' claim is that the court has jurisdiction because the suit relates to and involves a transaction covered by the blue sky law. This contention cannot be brushed aside with the statement that the rights of the plaintiffs are no different than those of minority stockholders in an ordinary stockholders' suit. The statute makes no classification of stockholders' suits. There is no such thing as an ordinary stockholders' suit. The real question in a case of this kind is whether the acts complained of relate to or involve a transaction covered by the blue sky law. Any other approach to this

question ignores the statute and begs the real question at issue. All minority stockholders' suits are predicated upon violations of the rights of the minority stockholders and the corporation. If the facts alleged in any such suit relate to or involve a transaction covered by the blue sky law, the court has jurisdiction, otherwise not. The present action is based upon a conspiracy to register and sell the stock and denude the corporation of its assets in violation of the blue sky law, and thereby to defraud plaintiffs of the amounts paid for their stock. The allegations of concealment of the labor liens, the fraudulent foreclosure of the same, and the other fraudulent acts of the defendants whereby the Redemption corporation was denuded of its assets are simply the means by which the fraudulent conspiracy was executed. The gist of the whole matter is that defendants conspired and intended from the beginning to obtain plaintiffs' money for stock representing an interest in the Redemption corporation whose property defendants intended fraudulently to acquire in violation of plaintiffs' rights as stockholders, thereby rendering the stock sold to them valueless. The conspiracy embraced and was executed by a series of acts all in violation of the blue sky law. The conspiracy itself was a violation of the law. Each of the acts by which the conspiracy was executed was a violation of the law. The corporation and each of the defendants named are all guilty of violations of the blue sky law by which this enormous fraud was perpetrated upon the plaintiffs. The acts upon which plaintiffs base their cause of action are: (1) That the stock which they purchased was registered; (2) that the registration was obtained by fraud in that the labor liens were concealed; (3) that the labor liens so fraudulently concealed to obtain registration of the stock were fraudulently foreclosed so that the corporation lost all of its property by reason thereof and thereby plaintiffs' stock was rendered valueless; (4) that the Redemption corporation's property was acquired fraudulently by defendants pursuant to a conspiracy for that purpose; (5) that plaintiffs were fraudulently prevented, by defendants, from protecting their investment as stockholders by raising the money necessary to discharge the liens and thus save the property of the corporation; (6) and that defendants

fraudulently acquired title to $75,000 of collateral for the payment of the labor liens in the amount of $1,281 by payment of $100 for the same. Plaintiffs seek to have the property of the corporation, fraudulently acquired by defendants, restored to the corporation.

The purpose of the blue sky law is to prevent fraud from the sale of securities. Numerous administrative processes are provided by which the sale of securities is supervised and regulated. Supervision and regulation of the sale of securities by the blue sky commission is continuous from petition for registration until the registration, if granted, has been exhausted. The purpose is not only to discover fraud in the initial proceedings for registration but to discover it at any subsequent stage of the proceedings, whether it be existent at the time of registration or occur afterward. The idea is to protect investors as fully as that can be done through an administrative agency. In connection with the original registration, it is the duty of the commission to ascertain whether fraud will result from the sale of the securities, 1 Mason Minn. St. 1927, § 3996-5, and by this section it is made the duty of the commission to deny the application if it appears that the sale of the securities will work a fraud on purchasers thereof, or if the applicant has violated any of the provisions of the act or any registration or lawful order of the commission. In this connection it is important to remember that the fraudulent concealment of the liens was a violation of the act and of the order of the commission requiring information concerning the securities. By subsection 8 of the act the commission is authorized to conduct investigations to determine whether sales of stock already registered shall be permitted and whether a registration granted shall be revoked. The language of the section is ample to cover this case and is as follows:

"Whenever the commission is in possession of information indicating that any registered security is fraudulent or that the further sale thereof would work a fraud on purchasers, or that the person for whom a registration was made has violated or is about to violate the registration or any lawful order of the commission or any of the provisions of this act or for good cause appearing to

the commission, it may issue its order requiring such person to show cause before the commission why such registration should not be revoked. * * * After such hearing the commission shall enter its order either vacating the order to show cause and suspension, or modifying the terms of the registration, or permanently revoking the registration or making such other disposition of the matter as the facts require."

Proceedings under subsection 8 were pending before the commission to discover the alleged fraudulent acts by which the corporation was deprived of its property, at the time these acts were taking place. The commission was circumvented by the fraudulent concealment and statements of the individual defendants from discovering the fraudulent purposes of their conspiracy and preventing the consummation thereof.

The scope of the blue sky law was enlarged by L. 1933, c. 408, to provide more adequate safeguards and protection for investors. By § 10 it provides that the department of commerce shall have the power, in cases like the one at bar, to apply to the court for a receiver of the corporation, if it appears that its business is being conducted "contrary to the laws of this state or with disregard to the rights of investors therein." An application for the appointment of a receiver of the Redemption corporation could have been made by the department of commerce in virtue of this power conferred upon it. Certainly this section discloses a legislative intent that the unlawful and fraudulent acts of the defendants shall be the basis for an application to the court for relief such as is sought by the plaintiffs here. If jurisdiction can be conferred by the act because of the existence of such facts, then certainly they relate to and involve a transaction within the meaning of the act.

These facts are sufficient to make the case one involving and relating to a transaction covered by the act. Causes of action based upon facts constituting violations of the blue sky laws are in relation to and involve transactions covered by the act. It has been held that an action will lie for money had and received upon a rescission because of such acts, Vercellini v. U. S. I. Realty Co.

158 Minn. 72, 196 N. W. 672; Castle v. Acme Ice Cream Co. 101 Cal. App. 94, 281 P. 396; Becker v. Stineman, 115 Cal. App. 740, 2 P. (2d) 444; Setchell v. Prochaska, 8 Cal. App. (2d) 541, 48 P. (2d) 117; 14 Fletcher, Cyc. Corp. p. 169, § 6767, note 16; that an action for common law fraud upon "a claim of fraud where the principal ground of fraud relates to an alleged untrue representation made by the broker to the effect that the securities sold were registered under the state laws," may be maintained, Vogel v. Chase Securities Corp (U. S. District Court, District of Minnesota, August 19, 1936, Nordbye, J.) ; and that conversion will lie against a broker by one who has intrusted securities to him in a transaction within the terms of the act, Kaiser v. Butchart, 197 Minn. 28, 265 N. W. 826, 828. These cases are illustrative of the scope of the law.

It is not necessary in such a case that the cause of action be based solely upon a violation of the blue sky law. For example, in Vogel v. Chase Securities Corp. *supra,* U. S. District Judge Nordbye said:

"It must be apparent that the fraud asserted involved a transaction which the Securities Act is specifically designed to prevent. The fact that plaintiff relies on express, fraudulent representations regarding the registration, rather than the illegality of the contract by reason of the violation of the statute, does not militate against his position that the proceeding herein is in relation to and involves a transaction under the securities act. There is no basis for the assertion that Section 3996-11 was only intended to confer jurisdiction upon the Commissioner of Securities in proceedings which are generally known as typical Blue-Sky suits."

The decision in Kaiser v. Butchart, 197 Minn. 28, 32, 265 N. W. 826, is predicated upon the ground that the transaction out of which the cause of action arose "occurred in the business appellants were licensed to carry on in this state."

It is conceded that the blue sky law is to be construed in the light of the purposes of its enactment. In 14 Fletcher, Cyc. Corp. p. 138, § 6736, the purposes of blue sky statutes are stated as follows: "It has been estimated that the annual loss in the sale of fraudulent securities throughout the United States is more than a

billion dollars. The purpose of these statutes is to protect the investing public against the imposition of unsubstantial schemes and the securities based upon them." In Hall v. Geiger-Jones Co. 242 U. S. 539, 550, 37 S. Ct. 217, 220, 61 L. ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643, the court said: "The name that is given to the law indicates the evil at which it is aimed, that is, to use the language of a cited case, 'speculative schemes which have no more basis than so many feet of blue sky,' or, as stated by counsel in another case, 'to stop the sale of stock in fly-by-night concerns, visionary oil wells, distant gold mines and other like fraudulent exploitations.'" In State v. Gopher Tire & Rubber Co. 146 Minn. 52, 55, 177 N. W. 937, this court used substantially the same language. The statute is remedial in its nature and is designed to protect the inexperienced, confiding, and credulous investor even "from his own foolish cupidity. It should, therefore, be liberally and sympathetically construed in order that its beneficent purpose may, so far as possible, be attained." People v. F. H. Smith Co. 230 App. Div. 268, 269, 243 N. Y. S. 446, 449. In Hall v. Geiger-Jones Co. 242 U. S. 539, 550, the court spoke of "distant gold mines," and in State v. Gopher Tire & Rubber Co. 146 Minn. 52, 55, 177 N. W. 937, this court speaks of "nonexistent gold mines." In this case the gold mine is a distant one, but fortunately, it is an existent one. But, as far as these plaintiffs are concerned, if the defendants are to be permitted to steal the corporate property by the fraud which they have practiced upon plaintiffs, the gold mine might just as well be nonexistent as to them. It is made so by the acts of the defendants if their fraud is not set aside. We should not give such acts judicial absolution unless the statute clearly so requires. Fine technicalities of construction should not be indulged in to enable promoters to escape liability to such purchasers. Rossi v. Jedlick, 115 Cal. App. 230, 1 P. (2d) 1065.

It seems clear that this is a case not only involving and relating to a transaction within the terms of the act but is based upon acts prohibited by the act so that it may be said to be an action based upon violations of the blue sky law of Minnesota.

■ The frauds committed by defendants have not been waived by plaintiffs' retention of the stock. The rule with respect to the waiver of fraud is that if a party discovers the fraud while the contract is wholly executory and thereafter executes the contract he waives the fraud for the reasons, first, that any damage accruing by reason of the fraud may be said to be due to his own performance of the contract and thus virtually to allow him to recover for self-inflicted injuries, as Mr. Justice Mitchell said in Thompson v. Libby, 36 Minn. 287, 31 N. W. 52, and, secondly, because he has in effect reaffirmed the contract in the light of the actual facts and conditions as he then knows them to exist. Dawson v. Thuet Bros. 147 Minn. 429, 180 N. W. 534. The instant case, however, is not one of an executory contract. Each of the plaintiffs paid for his stock, and the stock certificate was issued to him. The contract was performed and consummated as fully as it could be in each instance. It was a fully executed sale, the purchase price has been paid and delivery of the goods made.

In cases in which the contract has been performed, in whole or in part, before the fraud is discovered, the defrauded party may affirm the contract and bring an action for damages for deceit. 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 3833b, note 93; 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8612; Knopfler v. Flynn, 135 Minn. 333, 160 N. W. 860, Ann. Cas. 1918E, 538; Humphrey v. Sievers, 137 Minn. 373, 163 N. W. 737; Magnuson v. Burgess, 124 Minn. 374, 145 N. W. 32; Dawson v. Thuet Bros. 147 Minn. 429, 180 N. W. 534; Schmitt v. Ornes Esswein & Co. 149 Minn. 370, 183 N. W. 840; Perkins v. Meyerton, 190 Minn. 542, 251 N. W. 559; Mlnazek v. Libera, 83 Minn. 288, 86 N. W. 100; Neff v. Engler, 205 Cal. 484, 271 P. 744; Stowe v. Mather, 234 Mich. 385, 208 N. W. 609; 14 C. J. p. 589, § 864; 12 R. C. L. p. 409, § 155, p. 412, § 158. It is true that plaintiffs affirmed the purchase of the stock by keeping it. As a legal proposition it is impossible to maintain an action for damages for fraud and deceit inducing the purchase of personal property without affirming the contract of purchase. By affirming the contract in a case in which the fraud is discovered after the contract has been executed a party does not waive the

fraud. In Neibuhr v. Gage, 99 Minn. 149, 155, 108 N. W. 884, 109 N. W. 1, an action for fraud in the purchase of corporate stock in which plaintiff kept the stock and did not rescind, speaking of plaintiff's right to recover damages, this court said of plaintiff's election to keep the stock and sue for damages: "He ratifies and affirms the contract, but not the fraud by which it was obtained." The right of action to recover damages for fraud and deceit exists as an independent cause of action. Authorities *supra*. In Ettlinger v. National Surety Co. 221 N. Y. 467, 470, 117 N. E. 945, 946, 3 A. L. R. 865, in speaking of the right of the defrauded party, the court said: "If he elects not to avoid it he has an independent cause of action for damages arising from the fraud." He is not required to bring suit upon his cause of action immediately. He may sue at any time within the period of limitations. 12 R. C. L. p. 412, § 157, cited in the majority opinion, says, of the right of the defrauded party to bring an action for deceit after he has affirmed the contract: "Delay short of the period fixed by the statute of limitations will not defeat the right to recover damages in an action of deceit." Vogel v. Chase Securities Corp. (U. S. District Court, District of Minnesota, August 19, 1936, Nordbye, J.) ; Cottrill v. Krum, 100 Mo. 397, 13 S. W. 753, 18 A. S. R. 549; Barndt v. Frederick, 78 Wis. 1, 47 N. W. 6, 11 L. R. A. 199; Klerlein v. Werner, 307 Pa. 16, 160 A. 719; 27 C. J. p. 26, § 139.

Some of the fraudulent acts were committed before and some after the sale of the stock. The rules just stated apply to purchases of stock. Retention of corporate stock by a purchaser thereof who does not discover the fraud inducing such purchase until after full performance of the contract of sale, while affirming the sale of the stock, does not waive the fraud by which the sale was induced. 2 Cook, Corporations (8 ed.) p. 1283, § 354; 12 Fletcher, Cyc. Corp. p. 676, §§ 5599, 5600; 14 C. J. p. 589, § 864; Churchill v. St. George Development Co. 174 App. Div. 1, 160 N. Y. S. 357; Martin v. Veana Food Co. 153 Mich. 282, 116 N. W. 978; Castle v. Acme Ice Cream Co. 101 Cal. App. 94, 281 P. 396; 18 Cal. L. Rev. 149, 155; Stowe v. Mather, 234 Mich. 385, 208 N. W. 609; Gaylord v. Brown, 128 App. Div. 340, 112 N. Y. S. 745; Hotaling v. A. B. Leach & Co.

Inc. 247 N. Y. 84, 159 N. E. 870, 57 A. L. R. 1136; Dorsey Machine Co. v. McCaffrey, 139 Ind. 545, 47 A. S. R. 290; Jacobson v. Skinner Packing Co. 118 Neb. 711, 226 N. W. 321; Robinson v. Standard Stores, Inc. 52 R. I. 271, 273, 160 A. 471; see Engen v. Merchants & M. State Bank, 164 Minn. 293, 204 N. W. 963, 43 A. L. R. 610; Ricker v. J. L. Owens Co. 149 Minn. 130, 182 N. W. 960. In Castle v. Acme Ice Cream Co. 101 Cal. App. 94, 98, 281 P. 396, the court said: "Rescission is a proper remedy for cancellation of an unlawful contract when the invalidity does not appear on the face of the instrument. (Sec. 3406, Civ. Code.) It is, however, not the only remedy for loss sustained under facts similar to those which exist in the present case." In Randall v. California L. B. Syndicate, 217 Cal. 594, 599, 20 P. (2d) 331, 333, the court said: "The plaintiffs are not restricted to the remedy by way of rescission, but may bring an action for the damages suffered."

■ The defrauded purchaser has an election of remedies. He is entitled to rescission, an action for damages for fraud and deceit, or enforcement of the bargain which it was represented he was making. 2 Williston, Sales (2 ed.) p. 1618, § 645. The enforcement by the purchaser of the represented bargain, is a well recognized ground of relief in cases involving the fraudulent sale of corporate stock. In such cases suit may be brought to prevent the fraud from being consummated, and also to undo the fraud after it has been committed. 2 Cook, Corporations (8 ed.) p. 1283, § 354, enumerates the remedies. It points out that a case like that at bar has special features which give rise to special rights and remedies adaptable for the enforcement of them. In 2 Cook, Corporations (8 ed.) p. 1283, § 354, the rule is stated as follows:

"*Three remedies for the fraud—Blue Sky Laws.*—There are three methods by which a person who has been fraudulently induced to buy or sell stock may remedy the wrong. He may bring an action at law for the consideration, or an action at law for damages for the deceit, or he may file a bill in equity to have the transaction set aside. The second remedy is the most difficult and the last the most easy to maintain. At common law an action to recover back the whole of the purchase-money upon a rescission for fraud is

virtually a suit for money had and received. Counts in tort may be joined with a count in contract in a suit for damages and to rescind a sale of stock.

"In special cases other remedies are open to the purchaser. He may compel the defrauding party to abide by the statements that were made. Thus, where the vendor represented that the corporate property was unincumbered, equity may, at the instance of the purchaser of stock, enjoin the vendor from enforcing a lien which he has on such property."

The text is sustained by numerous authorities, to two of which we refer. In Jones v. Bolles, 9 Wall. 364, 19 L. ed. 734, it was held that the purchasers of stock were entitled to an injunction against the vendor from enforcing a lien against the corporate property which he had fraudulently represented to be free from liens. It was contended in that case that plaintiffs were entitled only to a remedy for damages by reason of their affirmance of the purchase of the stock, and were not entitled to a remedy in equity. The injunction was granted upon the ground that equity has jurisdiction in all cases of fraud. In Given v. Times-Republican Printing Co. (C. C. A.) 114 F. 92, one of the defendants was held to be estopped from maintaining an action at law against the corporation to enforce claims in the amount of $19,000 because of his previous fraudulent representations when plaintiff purchased the stock that the company was free from debt.

The undoing of fraud by minority stockholders, as in Jones v. Morrison, 31 Minn. 140, 16 N. W. 854, is not unlike rescission. The only difference is that as between individuals the act of rescinding is accomplished by the party directly, and in the case of a minority stockholder it is done indirectly by a cancellation of the fraudulent transaction between the corporation and the majority group. As far as concerns the corporation and the majority group, such a cancellation of a fraudulent transaction is the same in effect as a rescission by the corporation.

A minority stockholders' suit is an appropriate remedy to prevent the consummation as well as to undo a completed fraud in

the sale of corporate stock. In Jones v. Morrison, 31 Minn. 140, 16 N. W. 854, 857, at pages 145-146, Mr. Chief Justice Gilfillan uses language that aptly expresses the idea:

"The complaint alleges a plan or scheme—a conspiracy—by Dorilus and Clinton Morrison to cheat and defraud him in respect to such rights and interests, and that the specific acts charged were done to carry the scheme into effect. If this were so, they were part and parcel of it, each specific act as much so as any other. The object of the action is to protect plaintiff's rights and interests as a stockholder in the corporation from the invasion contemplated by the conspiracy, *to undo what has been done pursuant to it, so that his rights and interests shall remain as though the conspiracy had not been attempted.* It is immaterial that the acts differ in their particular character, that they were done at different times, and that the defendants do not all claim to be interested in, or benefited by, each of them, or in the same degree in any one of them."

In Cole v. Wells, 224 Mass. 504, 113 N. E. 189, it was held that although the plaintiff had a right to return his stock and receive its value under a Massachusetts statute, he could also bring an action as a minority stockholder to compel the corporation and its directors to return and restore to the corporation property which it had transferred in fraud of his rights as a minority stockholder. These instances are illustrative only.

Such an action is sometimes brought to prevent the enforcement of liens and to compel the restoration of corporate assets fraudulently transferred, Jones v. Bolles, 9 Wall. 364, 19 L. ed. 734; Given v. Times-Republican Printing Co. (C. C. A.) 114 F. 92; Ritchie v. People's Tel. Co. 22 S. D. 598, 119 N. W. 990.

■ It is not a ground for refusing jurisdiction that the Redemption corporation is organized under the laws of Colorado, that the real estate to be affected by any judgment to be rendered is situated in that state, and that some of the fraudulent transactions transpired there. Courts generally have taken jurisdiction over foreign corporations in cases of this kind. In Restatement, Conflict of Laws, § 199, the rule is stated:

"A court will entertain a suit by a shareholder of a foreign corporation in behalf of the corporation against its present or past officers, directors or majority shareholders on the ground that they have wrongfully appropriated assets of the corporation, or have benefited improperly in transactions with the corporation.

"Comment (b): In such a suit the court may order a rescission of the transaction with a restoration of the assets to the corporation and a return to it of any certificates of stock fraudulently issued, or the court may order an accounting. If the corporation or minority stockholders need further protection, the court may appoint a receiver to take charge of the corporate assets within the state."

The rule given in the Restatement prevails in this state. Tasler v. Peerless Tire Co. 144 Minn. 150, 174 N. W. 731. It is the generally accepted rule. 12 R. C. L. pp. 33-34, § 22; Babcock v. Farwell, 245 Ill. 14, 91 N. E. 683, 137 A. S. R. 284, 19 Ann. Cas. 74, and note; State ex rel. Watkins v. North American L. & T. Co. Ltd. 106 La. 621, 31 So. 172, 87 A. S. R. 309; Wineburgh v. United States S. & S. R. A. Co. 173 Mass. 60, 53 N. E. 145, 73 A. S. R. 261; Ernst v. Rutherford & B. S. Gas Co. 38 App. Div. 388, 56 N. Y. S. 403; Hallenborg v. Greene, 66 App. Div. 590, 73 N. Y. S. 403; N. Y. & N. H. R. Co. v. Schuyler, 34 N. Y. 30; Emerson, Talcott & Co. v. McCormick H. M. Co. 51 Mich. 5, 16 N. W. 182; Utley v. Clark-Gardner L. M. Co. 4 Colo. 369; German-American Coffee Co. v. Diehl, 216 N. Y. 57, 109 N. E. 875; Huguley v. Hamburg, 191 Ill. App. 21; Loan Society v. Eavenson, 241 Pa. 65, 88 A. 295; Sloan v. Clarkson, 105 Md. 171, 66 A. 18; Harding v. American Glucose Co. 182 Ill. 551, 64 L. R. A. 738, 74 A. S. R. 189. See note in 19 Ann. Cas. 88.

This court has applied the principle in a variety of cases. In Tasler v. Peerless Tire Co. 144 Minn. 150, 174 N. W. 731, 732, a receiver was appointed for the local assets of a South Dakota corporation, whose managing officers and office were within the state. At page 153, the court said: "But where a foreign corporation locates itself in this state and its managing officers are within this state, the courts of this state have jurisdiction to compel such of-

ficers to make restoration of assets unlawfully diverted by them and to restrain them from further unlawful diversion of assets. This is not the exercise of visitorial powers over the corporation, nor is it interference with the management of its internal affairs." In Small v. Minneapolis Electro-Matrix Co. 45 Minn. 264, 47 N. W. 797, a New Jersey corporation was enjoined from executing a lease to land in Minnesota. In Guilford v. Western Union Tel. Co. 59 Minn. 332, 61 N. W. 324, 50 A. S. R. 407, a New York corporation was compelled to issue a resident of Minnesota a new certificate of stock. In Selover v. Isle Harbor Land Co. 91 Minn. 451, 98 N. W. 344, specific performance was granted of a contract by a South Dakota corporation to issue stock in payment of land. In Gere v. Dorr, 114 Minn. 240, 130 N. W. 1022, an injunction was granted to enjoin the officers of an Arizona corporation from parting with stock fraudulently issued to them without consideration.

It is no answer to say that the courts of this state cannot render a judgment operating *ex proprio vigore* on lands of the corporation in Colorado to create, transfer, or vest title. Equity jurisdiction is exercised *in personam*. The original and primary jurisdiction of the old court of chancery was purely *in personam*. This jurisdiction was substantially enlarged by the writ of assistance to deliver possession, sequestration proceedings to compel performance of a decree, and statutes making decrees operative *in rem*. By force of statutes decrees have been made operative to vest title without the coercive remedies ordinarily granted in equity. 10 R. C. L. pp. 364-367, §§ 114, 115. The rule has always been recognized that in cases of contract, trust, or fraud a court of equity, having jurisdiction of the parties, is competent to entertain a suit for specific performance of the contract, or to establish a trust or for a conveyance, although the contract, trust, or fraudulent title pertains to lands in another state or country. The judgment in such cases is *in personam,* and the relief decreed is obtained through the party's personal obedience which is enforceable by injunction, attachment, and other like processes against the person.

In Massie v. Watts, 6 Cranch, 148, 160, 3 L. ed. 181, a suit was instituted in Kentucky by plaintiff, a resident of Virginia, for the

purpose of obtaining a conveyance of lands lying in the state of Ohio. It was claimed that the court did not have jurisdiction in Kentucky to render a decree for the conveyance of lands situated in Ohio. In an elaborate opinion, reviewing the English cases in which specific performance was granted of lands lying in foreign countries, Penn v. Lord Baltimore, 1 Vez. 444 (lands lying in North America), and trusts were enforced involving lands in foreign countries, Arglasse v. Muschamp, 1 Vern. 75; The Earl of Kildare v. Sir Morrice Eustace and Fitzgerald, 1 Vern. 419 (lands lying in Ireland), Chief Justice Marshall stated the rule which since has been universally accepted [6 Cranch, 160]:

"Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree."

This court has applied the rule announced by Chief Justice Marshall in several cases. In Hawkins v. Ireland, 64 Minn. 339, 67 N. W. 73, 75, 58 A. S. R. 534, Ireland transferred certain land situated in North Dakota to his wife in fraud of his creditors. Hawkins brought an action to compel the wife to convey the land to him as assignee for the benefit of creditors and to restrain the defendant bank in that case from prosecuting a suit in the courts of North Dakota to subject the land in question to the payment of its claim. In upholding a judgment directing the wife to convey the land to plaintiff as assignee for the benefit of creditors and enjoining the bank from prosecuting the action referred to, the following language was used [64 Minn. 344]:

"The power of the court thus to enjoin the appellant is undoubted. All the parties to this action are citizens of this state, and subject to the jurisdiction of the court. The facts that the land is in another state, and the action which the appellant is forbidden to further prosecute is there pending, do not affect the question of the power of the court in the premises. The court, in such a case,

simply commands its own citizens, not the courts of another state. A court of equity of this state has the power and will restrain its own citizens, of whom it has jurisdiction, from prosecuting suits in the courts of other states and foreign jurisdictions, whenever the facts of the case make such restraint necessary to enable the court to do justice, and prevent one citizen from obtaining an inequitable advantage over other citizens. 'The court acts in personam, and will not suffer any one within its reach to do what is contrary to its notions of equity, merely because the act to be done may be, in point of locality, beyond its jurisdiction.' Phelps v. McDonald, 99 U. S. 298, 25 L. ed. 473; Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. ed. 538; Cunningham v. Butler, 142 Mass. 47, 6 N. E. 782, and 56 Am. Rep. 663, and note."

In State ex rel. Barrett v. District Court, 94 Minn. 370, 102 N. W. 869, 3 Ann. Cas. 725, it was held that an action for the cancellation of a contract for the sale of land is a transitory action and need not be brought where the land is situated. In the opinion, Hayes v. O'Brien, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555, holding that a suit may be maintained to set aside a deed and obtain specific performance of a contract of land situated in another county, is cited with approval. At page 372 of the opinion, Massie v. Watts, 6 Cranch, 148, 3 L. ed. 181, is cited with approval. In Pavelka v. Pavelka, 116 Minn. 75, 133 N. W. 176, 177, it appeared that plaintiff was entitled to a one-half interest in certain land situated in Wisconsin, and the court directed the defendant to convey a one-half interest to her. At page 78 of the opinion it was pointed out that it is true that the title to real estate situated in Wisconsin must be governed by the laws of that state, but the court said:

"However, the fact that real estate is situated beyond the jurisdiction of the court does not prevent it from acting in personam, and commanding, with reference thereto, its own citizens, of whom it has jurisdiction, whenever it is necessary to enable the court to do justice between the parties before it. It may in such cases compel a conveyance of real estate situated in another state." See 4 R. C. L. p. 489, § 4.

The objection most commonly urged is that the granting of relief to minority stockholders is the exercise of visitorial power that rightfully belongs to the state of the creation of the corporation and that therefore courts of other states are without jurisdiction. This argument has been held to be untenable. Where all of the parties necessary to the full and proper adjustment of the rights involved are before the court, it has jurisdiction of a case by minority stockholders in a foreign corporation to redress grievances in corporate management by a decree acting directly on the persons of the defendants. 12 R. C. L. pp. 33, 34, § 22.

Finally, the objection that the Redemption corporation is a Colorado corporation is not open to the defendants. The rule that courts will not interfere with the internal affairs of foreign corporations is for the protection of the corporation. Lind v. Johnson, 183 Minn. 239, 236 N. W. 317. Where the suit is brought against the officers or directors for misappropriation of the corporate assets and the foreign corporation is named as a party defendant, it is merely a nominal party, and the courts consider the suit as one on behalf of the corporation itself and accordingly grant relief. Such suits are regarded as brought on behalf of the corporation, and the rule against interference with its internal affairs does not apply. Beard v. Beard, 66 Or. 512, 518, 133 P. 797, 134 P. 1196; Tasler v. Peerless Tire Co. 144 Minn. 150, 174 N. W. 731; 3 Pomeroy, Eq. Jurisprudence (4 ed.) p. 2523, § 1095; 18 Minn. L. Rev. 192, 196, 201; 16 Minn. L. Rev. 206; 8 Thompson, Corp. (3 ed.) § 6699; Wineburgh v. United States S. & S. R. A. Co. 173 Mass. 60, 53 N. E. 145, 73 A. S. R. 261 (per Holmes, J.); Dana v. Morgan (C. C. A.) 232 F. 85; Babcock v. Farwell, 245 Ill. 14, 91 N. E. 683, 137 A. S. R. 284, 19 Ann. Cas. 74, and note.

It is clear that the courts of Colorado cannot grant complete relief, and the parties should not be sent to the courts of that state. Jurisdiction cannot be obtained there over any of the parties except the Redemption corporation. Complete jurisdiction has been obtained over all the parties in the present suit, and the Redemption corporation is merely a nominal party, brought in to receive the benefit of the judgment to be made and so as to determine the mat-

ter among all the parties. The rights of all can be adjudicated in the present suit, and the decree can be enforced *in personam*. In such a situation the doctrine of convenience is without substantial weight. Mr. Justice Cardozo in a separate dissenting opinion in Rogers v. Guaranty Tr. Co. 288 U. S. 123, 150, 151, 53 S. Ct. 295, 305, 77 L. ed. 652, 89 A. L. R. 720, sums up the entire matter with matchless persuasiveness in the following language:

"The doctrine of *forum non conveniens* is an instrument of justice. Courts must be slow to apply it at the instance of directors charged as personal wrongdoers, when justice will be delayed, even though not thwarted altogether, if jurisdiction is refused. * * * The overmastering necessity of rebuking fraud or breach of trust will outweigh competing policies and shift the balance of convenience."

We should be mindful, too, of the words of caution of Mr. Justice Mitchell in Guilford v. Western Union Tel. Co. 59 Minn. 332, 61 N. W. 324, 326, 50 A. S. R. 407, at page 342: "* * * before we send our own citizens to a foreign jurisdiction for redress, it should be very clear that the subject of the action is beyond the limits of the power or sovereignty of the state over the foreign corporation."

The blue sky law confers upon the courts of Minnesota jurisdiction to entertain any action which might have been brought in respect of any transaction covered by the act. It does not limit the jurisdiction of the courts to any one action or particular class of actions. Subsection 24 of the law declares:

"Nothing in this act shall limit statutory or common law right of any person to bring action in any court for any act involved in the sale of securities, * * *."

One of the remedies to which plaintiffs were entitled was to bring a minority stockholders' suit such as they have brought. Therefore they are squarely within the terms of the act. This act determines the public policy of Minnesota and the duty of its courts. It is not for this court to approve or condemn the public policy prescribed by the statutes of the state. By the blue sky law, juris-

diction is conferred over nonresident dealers in securities. The act is a statutory declaration that our citizens shall be entitled to relief in our courts against those who are subject to the terms of the act. It is to be remembered that the blue sky law is a remedial law and was designed, among other things, to afford relief to our citizens against the citizens of other states who have transacted business here in selling their securities. One of the purposes of the law is to place nonresidents selling securities upon the same basis as the residents of the state of Minnesota so that our citizens may have a remedy against them because of the prevalence of fraud and other wrongdoing in connection with the sale of securities. The blue sky law was enacted to protect the people of Minnesota against dishonest and crooked promoters and vendors of corporate securities. Large numbers of such promoters and dealers used to come into the state of Minnesota for a comparatively short period of time, during which they sold their fraudulent and worthless securities to our people and then departed to points outside the state. The losses caused to the people of Minnesota by such fraudulent practices prior to the enactment of the blue sky law is stated to have been many millions of dollars per year. It was found that the people who purchased such securities were practically without a remedy if they had to go to foreign jurisdictions to pursue those who had defrauded them and sue them where they found them. The trend of legislation has been to require foreign corporations as a condition precedent to the right to do business within a state to appoint a resident agent on whom process may be served. 14a C. J. p. 1258. In 32 Mich. L. Rev. 909, it is pointed out that in the absence of such statutes conferring local jurisdiction there would be no remedy in many instances because the costs of the remedy would exceed the value of the fruits of litigation and that the result would be to a large extent immunity from legal responsibility. That would be precisely the situation here. The exercise of the jurisdiction possessed by our courts under the blue sky law is a reasonable and a just one. In Lafayette Ins. Co. v. French, 18 How. 404, 407, 15 L. ed. 451, in speaking of an Ohio

statute providing for the service upon the resident agent of an insurance company, the court said:

"We find nothing in this provision either unreasonable in itself, or in conflict with any principle of public law. It cannot be deemed unreasonable that the State of Ohio should endeavor to secure to its citizens a remedy, in their domestic forum, upon this important class of contracts made and to be performed within that State, and fully subject to its laws; nor that proper means should be used to compel foreign corporations, transacting this business of insurance within the State, for their benefit and profit, to answer there for the breach of their contracts of insurance there made and to be performed."

See Tolerton & Stetson Co. v. Barck, 84 Minn. 497, 88 N. W. 19; G. Heileman Brg. Co. v. Peimeisl, 85 Minn. 121, 123, 88 N. W. 441, 442, where the court said:

"This legislation is neither hostile nor unjust to foreign corporations, for its purpose is to place them upon an equality with domestic corporations, both as to privileges and burdens; and it is the duty of the courts of the state to give its provisions full effect, and not emasculate them by any technical construction."

It seems that there is no serious constitutional question involved in this case. Pennsylvania F. Ins. Co. v. Gold Issue M. & M. Co. 243 U. S. 93, 37 S. Ct. 344, 61 L. ed. 610. It is clear that the case comes within the blue sky law. The Supreme Court of the United States has uniformly sustained such laws and jurisdiction taken under them. The cases are so numerous that a citation of them is not necessary. 14a C. J. p. 1258, § 3960, note 77.

The order should be affirmed.

Mr. Chief Justice Gallagher took no part in the consideration or decision of this case.